EXHIBIT

FOUR

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEB SHIPPING CO., LTD.,

    Plaintiff,

-against-

EMMSONS INTERNATIONAL, LTD.,

    Defendants.

Index No. 06 Civ. 7649

### AFFIDAVIT OF ANIL K. MONGA IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE VERIFIED COMPLAINT

Anil K. Monga, being duly sworn deposes and says:

1. I am *Managing Director* of Emmsons International, Ltd. ("Emmsons"). I make this affidavit based on my own personal knowledge.

2. Emmsons is an Indian agro-commodities exporting company established in 1993 and engaged in the business of importing and exporting, among other things, rice, grains, sulphur, fertilizer, steel and iron ore. Emmsons has been accorded the status of a "Three Star Trading House" by the Directorate General of Foreign Trade of the Indian Ministry of Commerce and Industry, indicating its status as an established and reliable exporter in the Indian commodities trading sector.

RECEIVED
FEB 12 2007

-2-

3. Emmsons has never conducted any business in the United States, has never owned any real or personal property in the United States, and has never had any agents, customers, suppliers or any other dealings or contacts in or with the United States.

4. On February 17, 2005, an arbitral award was issued in London against Emmsons and in favor of GEB Shipping Co., Ltd. ("GEB Shipping") in the amount of $129,250.47 and €30,000, plus interest. A copy of the Final Award of the London Arbitrators (the "Award") is attached hereto as Exhibit "A." The arbitration arose from Emmsons's charter from GEB Shipping of a vessel, the *Evangelos L*, to ship wheat from Kandla, India, to Hodeidah, Yemen. The Award was based on three claims: (a) damage to the vessel from an explosion caused by cargo fumigation devices, (b) indemnity for GEB Shipping's settlement of a shortage claim by the receivers of the wheat in Hodeidah (Emmsons and GEB Shipping agreed that the shortage claim was false, but GEB Shipping asserted successfully that its settlement was reasonable and that Emmsons had a duty to indemnify GEB Shipping), and (c) for payment of an Additional War Risk Premium of $32,500 because the destination of the shipment was Yemen. Exhibit A at page ___.

5. GEB Shipping has filed an application, attached hereto as Exhibit "B," in the High Court of Delhi seeking execution of the Arbitration Award by attachment and sale of the immovable and movable property of Emmsons, including the offices and all the furniture of Emmsons offices in Delhi and Emmsons' bank balances, and the commitment of the directors of Emmsons to civil prison for non-payment of the Award.

6. By letter dated November 7, 2006, GEB Shipping's attorneys sent Emmsons a Notice of Lawsuit and Maritime Attachment (the "Notice"), a copy of which is attached hereto as Exhibit "C." The Notice included copies of the Verified Complaint in this

-3-

action, this Court's Order for Issuance of Process of Maritime Attachment, and the Process of Maritime Attachment and Garnishment ("PMAG") against all property or debts owned by or owed to Emmsons, including monies being electronically transferred by or to Emmsons. The Notice also informed Emmsons of the attachment by Standard Chartered Bank pursuant to the PMAG of funds purportedly belonging to Emmsons. Specifically, the Notice stated, "[t]he Standard Chartered Bank reports that it has restrained funds being wire transferred through the Standard Chartered Bank by Emmsons in the amount of US$274,000.00 on November 6, 2006." By a letter dated November 28, 2006, attached hereto as Exhibit "D," GEB Shipping's attorneys informed Emmsons that an additional $91,427.17 was being held by Standard Chartered Bank under the PMAG.

7. The funds being held by Standard Chartered Bank under the PMAG are not property or debts owned by or owed to Emmsons. They are the proceeds of a bill of exchange purchased from Emmsons by Oriental Bank of Commerce ("Oriental Bank") and are the exclusive property of Oriental Bank.

8. Emmsons routinely uses bills of exchange in international commodities transactions under a credit facility, called a Foreign Usance Documentary Bill Purchased facility (the "Bill Purchasing Facility"), with Oriental Bank, an Indian bank. Emmsons has for more than 10 years maintained a banking relationship with Oriental Bank that has included a number of credit facilities, one of which is the Bill Purchasing Facility that covered Oriental Bank's purchase of the bill of exchange at issue. The details of the Bill Purchasing Facility are set forth in the Sanction of/Renewal-cum-Enhancement of Credit Facilities from Oriental Bank to Emmsons dated August 8, 2006 and attached hereto as Exhibit "E."



- 4 -

9. Under the Bill Purchasing Facility, Emmsons issues a bill of exchange drawn on the importer's bank and payable to Oriental Bank. Emmsons then delivers the bill of exchange, together with the necessary commercial documents such as the bill of lading and commercial invoice, to Oriental Bank with a request that Oriental Bank purchase, usually at a discount, the bill of exchange and the commercial documents in accordance with the Bill Purchasing Facility. Oriental Bank credits Emmsons's account, endorses the bill of exchange and presents it, along with the commercial documents, to the importer's bank with the instruction to release the commercial documents to the importer in return for either payment or the importer's signing of a time draft promising to pay at a later date (the usance period), but no later than ninety days from the date of shipping.

10. The bill of exchange at issue arose from a contract entered into in May by Emmsons with Akila Trading Party Ltd. ("Akila") to ship rice to South Africa. The bill of exchange, together with the commercial documents arising from the rice shipment, is attached hereto as Exhibit "F." On August 21, 2006, the rice was shipped and the bill of exchange was drawn by Emmsons on Akila in the amount of $474,000. Exhibit F at page 1. Payment was due ninety days from the date of the bill of lading, that is, November 19, 2006. *Id.*.

11. On August 28, 2006, Oriental Bank purchased the bill of exchange and the export documents pursuant to the Bill Purchasing Facility. *Letter of Oriental Bank to Standard Chartered Bank dated December 16, 2006*, attached hereto as Exhibit "G." Oriental Bank then presented the documents to Akila's bank, the State Bank of India, for delivery to and payment by Akila. Exhibit G at page 1. Akila confirmed the acceptance of the bill of exchange and the due date of payment. *Id. at page 1.* Oriental Bank then sent a foreign bills purchase advice, attached

as Exhibit "G," to Emmsons noting that it had purchased the export documents and credited Emmsons's account for the purchase price.

12. On November 3, 2006 and again on November 20, 2006, pursuant to the bill of exchange, State Bank of India transferred funds to an account maintained by Oriental Bank at ABN Amro Bank NV in New York. *Answer of Garnishee Standard Chartered Bank In Response to Maritime Attachment and Garnishment* attached hereto as Exhibit "H." The wire transfer instructions designate Oriental Bank as the beneficiary and its bank as ABN Amro Bank NV in New York. *Id.* The instructions also contained information provided by the originator, State Bank of India, to the beneficiary, Oriental Bank, as to the purpose of the wire transfer. *Id.*

13. Almost one month before the filing of the Verified Complaint and PMAG in this action, Oriental Bank purchased the bill of exchange from Emmsons and delivered it to Akila for payment. The purchase of the bill of exchange by Oriental Bank was done in the regular course of business between Emmsons and Oriental Bank and pursuant to a long-standing credit facility between Oriental Bank and Emmsons. Oriental Bank is the holder in due course of the bill of exchange and is the exclusive owner of the attached funds as the proceeds due under the bill of exchange.

14. When entering into the transaction with Akila, Emmsons had no intention to submit itself to the jurisdiction of any state or federal courts sitting in New York, nor did Emmsons have any notion that entering into a transaction with a South African company, facilitated by two Indian banks, exposed Emmsons to a risk of being sued in New York.

15. Prosecution of an action to enforce the Award in New York causes great and unfair hardship to Emmsons, particularly in light of the fact that Emmsons is already



-6-

defending a parallel action brought by GEB in the Delhi High Court, a court that clearly has personal and territorial jurisdiction over Emmsons and its real and personal property.

_____
Emmsons

**ATTESTED**

*[signature]*

**Notary Public**
Sworn to before me on
this 8th day of February 2007

NIRMAL SINGH
ADVOCATE
Notary Public Delhi India
Reg. No. 1635/2001
Term Expiring on 14/2009

*[seal: NOTARY — NIRMAL SINGH DELHI R.No. 1635 — GOVT. OF INDIA]*

*[stamp: VALID OUT SIDE INDIA]*