UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
GEB SHIPPING CO., LTD.,

                          :     Index No. 06 Civ. 7649

               Plaintiff,

                          :

      -against-

                          :

EMMSONS INTERNATIONAL, LTD.,    :

                          :

               Defendants.
-----------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO VACATE THE EX-PARTE ORDER FOR PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT UNDER SUPPLEMENTAL RULE E(4)(f) AND TO DISMISS THE COMPLAINT PURSUANT TO THE FEDERAL RULE OF CIVIL PROCEDURE 12(b)**

## TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES…………………...…...…………………………………iii

PRELIMINARY STATEMENT………………………………………………………1

STATEMENT OF FACTS…………………………………………………………….2

    THE CHARTER PARTY DISPUTE AND THE LONDON ARBITRATION AWARD……2

    THE NEW DELHI LITIGATION………………………………………………3

    THE CREDIT FACILITY……………………………………………………4

    THE BILL OF EXCHANGE…………………………………………………5

ARGUMENT……………………………………………………………………....6

1.    THE BURDEN IS ON GEB SHIPPING TO SHOW WHY THE PMAG
    SHOULD NOT BE VACATED OR OTHER RELIEF GRANTED……………………6

2.    THE BURDEN IS ON GEB SHIPPING TO PROVE OWNERSHIP OF THE
    PROPERTY BY EMMSONS………………………………………………6

3.    CHOICE OF LAW………………………………………………………...7

4.    THE ATTACHMENT IS INVALID BECAUSE STANDARD CHARTERED BANK IS
    NOT THE PROPER GARNISHEE AND BECAUSE THE PROPERTY IS NOT
    LOCATED IN THIS JURISDICTION…………………………………………8

    a.    THE BILL OF EXCHANGE IS A NEGOTIABLE INSTRUMENT……………8

    b.    ORIENTAL BANK IS THE HOLDER IN DUE COURSE
        OF THE BILL OF EXCHANGE…………………………………………8

    c.    AS HOLDER IN DUE COURSE OF THE BILL OF EXCHANGE,
        ORIENTAL BANK IS THE PROPER GARNISHEE……………………………9

5.    THE PROPER GARNISHEE OF FUNDS BEING HELD BY
    ORIENTAL BANK IS ORIENTAL BANK……………………………………14

6.    ELECTRONIC FUNDS TRANSFERS ARE NOT AN ATTACHABLE INTEREST…16

7.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE THIS
      COURT DOES NOT HAVE JURISDICTION OVER THE DEFENDANT...............17

## TABLE OF AUTHORITIES

Page No(s).

### CASES

*ABKCO Industries, Inc. v. Apple Films, Inc.*,
   39 N.Y.2d 670, 350 N.E.2d 899, 385 N.Y.S.2d 511 (N.Y. 1976)................................14

*Aqua Stoli Shipping Ltd., v. Gardner Smith Pty Ltd.*,
   460 F.3d 434, 2006 A.M.C. 1872, (2d Cir. 2006)..............................................9, 11, 16

*Blueeye Nav. v. Oltenia Nav., Inc.*,
   No. 94 Civ. 1500 (LAP), 94 Civ. 2653 (LAP), 1995 WL 66654 (S.D.N.Y.)...............7, 17

*Cablevision Systems Corp. v. 45 Midland Enterprises*,
   858 F.Supp. 42 (S.D.N.Y. 1994)..............................................................13

*DiStefano v. Carozzi N. Am., Inc.*,
   286 F.3d 81 (2d Cir. 2001).......................................................................17

*Dominion Bulk International, S.A. v. Naviera Panoceanica, S.A.C.*,
   2006 WL 3408799 (S.D.N.Y.)..............................................................7, 10

*Dyer v. Dyer*,
   231 A.D. 453, 247 N.Y.S. 540 (1st Dep't. 1931)..............................................12

*Energy Transport, Ltd. v. M.V. San Sebastian*,
   2003 WL 21415267 (S.D.N.Y.)..........................................................11, 14, 15

*Ferrostaal Metals Corp. v. S.S. Lash Pacifico*,
   652 F.Supp. 420 (S.D.N.Y. 1987).............................................................10

*Filia Compania Naviera S.A. v. Petroship, S.A.*,
   No. 81-7515, 1982 U.S. Dis. LEXIS 9404 (S.D.N.Y.)..........................................7

*HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas y Oleicos S.A. de C.V.*,
   2005 WL 1036127 (S.D.N.Y.)...............................................................10

*Koehler v. Bank of Bermuda Ltd.*,
   2005 WL 551115 (S.D.N.Y.)..................................................................12

*Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*,
   961 F.Supp. 600 (S.D.N.Y., 1997)..............................................................7

*Maersk, Inc. v. Neewra, Inc.*,
   2006 WL 2854298 (S.D.N.Y.)..................................................................7

*Maersk, Inc. v. Neewra, Inc.,*
    443 F.Supp.2d 519 (S.D.N.Y. 2006)………………………………………………10

*Maryland Tuna Corp. v. MS Benares,*
    429 F.2d 307 (2d Cir. 1970)……………………………..…………….....7

*MCI Communications Corp. v. Russell,*
    861 F.Supp. 280, 281 (S.D.N.Y. 1994)………………………………………13

*Noble Shipping, Inc. v. Euro-Maritime Chartering Ltd.,*
    2003 WL 23021974 (S.D.N.Y.)………………………………………………10

*Oceanfocus Shipping, Ltd. v. Naviera Humbolt,*
    962 F.Supp. 1481 (S.D.Fla. 1996)……………………………………………10

*Prime Shipping Co. Ltd., v. Wajilam Exports(s) Pte. Ltd.,*
    2006 WL 1539330 (S.D.N.Y.)……………………………………………....10

*Reibor International, Ltd. v. Cargo Carriers (KACZ-CO.) Ltd.,*
    759 F.2d 262, 1985 A.M.C. 2269, 53 USLW 2543 (2d Cir. 1985)………………..….11

*Robinson v. Overseas Military Sales Corp.,*
    21 F.3d 502 (2d Cir. 1994)…………………………………………………17

*Schueler v. Rayjas Enterprises, Inc.,*
    847 F.Supp. 1147  (S.D.N.Y. 1994)…………………………………………13

*Seamar Shipping Corp. v. Kremikovtzi Trade Ltd,*
    2006 WL 3335578 (S.D.N.Y.)…………………………………...……………11

*T & O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.,*
    415 F.Supp.2d 310 (S.D.N.Y. 2006)………………………………………....7

*Ullises Shipping Corp. v FAL Shipping Co. Ltd.,*
    415 F.Supp.2d 318, 2006 A.M.C. 1094 (S.D.N.Y.)……………………………6, 11

*Underwriters Bank, Inc. v. First Chicago Intern. Banking Corp.,*
    47 Misc.2d 539, 262 N.Y.S.2d 828 (Sup.1965)………………………………12

*Union Planters Nat'l Bank v. World Energy Sys. Assoc.,*
    816 F.2d 1092 (6th Cir. 1987)………………………………………………...10

*Unitas Finance Ltd. v. Di Gregorio Navegacao, Ltda.,*
    1999 WL 33116415 (D.N.J.)…………………………………………………6

*United Shipping Servs. Three, Inc. v. U.S. Express Lines, Ltd.,*
    1998 WL 770599 (E.D.Pa.)...............................................................................6

*United States v. Daccarett,*
    6 F.3d 37 (2d Cir. 1993).................................................................................17

*Vamvaship Maritime Ltd. v. Shivnath Rai Harnarain (India) Ltd.,*
    2006 WL 1030227 (S.D.N.Y. 2006)....................................................10, 16

*Winter Storm Shipping, Ltd. v. TPI,*
    310 F.3d 263, 48 UCC Rep.Serv.2d 1255 (2d Cir. 2002)....................10, 16

*Winter Storm Shipping. Ltd. v. TPI,*
    198 F.Supp.2d 385, 2002 A.M.C. 461, 46 UCC Rep.Serv.2d 796 (S.D.N.Y. 2002)...6, 17

**STATUTES**

Federal Rules of Civil Procedure, Rule B of the Supplemental Rules for
    Certain Admiralty and Maritime Claims...............1, 2, 7, 10, 11, 12, 14, 15, 16, 17

Federal Rules of Civil Procedure, Rule E of the Supplemental Rules for
    Certain Admiralty and Maritime Claims...............................................6, 16

28 United States Code §§ 3001 and 3205(b)(2)(c)...............................................13

New York Civil Practice Laws and Rules §§ 5201(c)(4) and 6202...................11, 12

Negotiable Instruments Act, 1881 (India), Chapters II, IV, XIII, and XVI *et seq*...............7, 8, 9

Defendant submits this memorandum of law in support of its motion pursuant to Rules B(1) and E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims (the "Supplemental Rules") and Rule 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Fed. R. Civ. P.") to vacate the ex-parte order for process of maritime attachment and garnishment and to dismiss the complaint of plaintiff GEB Shipping Co., Ltd. ("GEB Shipping" or the "Plaintiff") on the grounds that Emmsons International Ltd. ("Emmsons" or the "Defendant") has no attachable interest in the subject property and therefore this Court is without personal jurisdiction over Emmsons. The only basis for jurisdiction over Emmsons by this Court is the purported attachment and garnishment of its property in this district pursuant to Supplemental Rule B(1) which much be vacated.

## PRELIMINARY STATEMENT

This action was brought by GEB Shipping Co., Ltd. ("GEB Shipping" or the "Plaintiff") against Emmsons International, Ltd. ("Emmsons" or the "Defendant"). Emmsons is a trading company in India, involved in the import and export of rice, grains, steel and iron ore, and other commodities worldwide. GEB Shipping is the Cyprus based owner of a vessel, the "Evangelos L," which was hired by Emmsons in 2003 to transport a shipment of wheat from India to Yemen. Although the vessel completed its discharge at Yemen, GEB Shipping brought an arbitration in London, England and was awarded damages, indemnity and counsel fees arising from losses incurred in the shipment.

On September 21, 2006, the Plaintiff filed an application in the High Court of Delhi seeking execution of the award by attachment and sale of property of Emmsons located in India. The following day, September 22, 2006, the Plaintiff filed the instant complaint and application for attachment in this Court pursuant to Rule B of the Supplemental Rules (the

"Complaint"). The only property of Emmsons located in this jurisdiction, according to the Complaint, consists of "payments that are being electronically transmitted through New York, and which are located in this district in the possession of intermediary banks who are garnishees with respect to this action." Complaint, paragraph 17.

On September 22, 2006, this Court issued an ex-parte process of maritime attachment and garnishment ("PMAG"), pursuant to which GEB Shipping served a garnishment order on nine banks in this jurisdiction, including Standard Chartered Bank ("Standard Chartered Bank"). On November 3, 2006, and again on November 20, Standard Chartered Bank restrained electronic funds being transferred from an account at State Bank of India ("State Bank") maintained by Akila Trading Pty LTD. ("Akila") to an account at ABN Amro Bank NV ("ABN Amro") in New York maintained by Oriental Bank of Commerce ("Oriental Bank"). None of the above parties, State Bank, Akila, ABN Amro, or Oriental Bank, is a party in this action, or related to the dispute between Emmsons and GEB Shipping.

The key question here is whether an electronic fund transfer of proceeds of a bill of exchange that has previously been negotiated to the defendant's bank is attachable as the defendant's tangible or intangible personal property under Supplemental Rule B. The answer is no for the following reasons: (1) pursuant to New York law and analogous federal principles, proceeds of a negotiable instrument are not attachable property; and (2) pursuant to Federal admiralty law, the proper garnishee of funds held by a third party is the third party, not an intermediary.

## STATEMENT OF FACTS

### The Charter Party Dispute and the London Arbitration Award

By a time charter dated October 30, 2002, Emmsons hired the vessel "Evangelos L" from its owner, GEB Shipping, for a one time chartered trip of bulk wheat from Kandla, India to Hodeidah, Yemen. The time charter provided that any dispute between the two parties would be referred to arbitration in London, England. In 2003, GEB Shipping brought an action in London against Emmsons seeking (1) damages arising from a minor explosion on board the ship during shipment, (2) indemnity in respect of the settlement of an admittedly bogus shortage claim by the receivers of the cargo in Yemen, and (3) payment of a war risk premium charged by underwriters due to the shipment to Yemen. *Arbitration Between GEB Shipping Co. Ltd, and Emmsons International Ltd.* (2005), at 7 ¶ 6 (Monga Aff., Ex. A). GEB Shipping did not suggest that Emmsons was guilty of any fraud, dishonesty or inequitable conduct.[1]

On February 17, 2005, an award of costs in favor of GEB shipping was issued in the amount of £57,974.72 and €35,000, plus interest (together with the award of February 17, 2005, the "Arbitration Award"). *Id.* at 27, ¶ B (Monga Aff., Ex. A).

**The New Delhi Litigation**

---

[1]     The arbitration panel determined that the explosion was caused by the fumigant and/or the way in which it was applied to the cargo of wheat. *Id.* at 16, ¶ 25. Although the panel noted that Emmsons' order to fumigate the bulk wheat was "a normal and accepted practice," *Id.* at 9, ¶ 11, by "giving that order, loading the cargo and undertaking fumigation, the Charterers [Emmsons] exposed Owners [GEB Shipping] to a risk which, on the true construction of the charterparty, the Owners did not agree to bear." *Id.* at 17, ¶ 27. The panel determined that Emmsons had already paid for much of the cost of the repairs to the ship, but awarded GEB Shipping an amount for necessary later repairs and the amount of hire for the time lost while repairs were undertaken. *Id.* at 18—19, ¶¶ 28—30.

The shortage claim arose when receivers of the cargo in Yemen claimed that there was a shortage of wheat and would not allow outward clearance of the vessel until the shortage claim had been settled. *Id.* at 6, ¶5. In response, GEB Shipping effected a settlement to win the ship's release. *Id.* The arbitration panel found that both parties agreed that the shortage claim was a sham. *Id.* at 20, ¶ 31. In addition, the panel noted that it was unfortunate that GEB Shipping did not give Emmsons an opportunity to comment upon or otherwise become involved while the cargo claim was pending in Yemen. *Id.* However, the arbitration panel determined that pursuant to international law the liability for cargo claims, whatever their validity, should be apportioned between owners and charterers and, therefore, Emmsons had to pay for part of the settlement. *Id.* at 21, ¶ 32.

As for the third claim for payment of an additional war risk premium, the panel said that, since it had been known from the beginning where the wheat was to be shipped, it had "some sympathy with the Charterers' [Emmsons'] submission that a call at Hodeidah would have been factored into the daily rate of hire," *Id.* at 22, ¶ 34. However, it determined that the charter party required that any additional premium required by reason of the area traded was to be paid by the charterer. *Id.* at 20-21, ¶¶ 31-32.

On or about September 21, 2006, GEB Shipping filed an application in the High Court of Delhi seeking execution of the Arbitration Award by attachment and sale of the immovable and movable property of Emmsons, including the offices and all the furniture of Emmsons offices in Delhi and Emmsons' bank balances, and the commitment of the directors of Emmsons to civil prison for non-payment of the Arbitration Award. *Application to High Court of Delhi, GEB Shipping Co. Ltd., v. Emmsons International Ltd.*, (Sep. 2006) (Monga Aff., Ex. B). The matter is pending in the High Court of Delhi where Emmsons is domiciled and full relief can be afforded therein to all parties.

**The Credit Facility**

For approximately the past 10 years, there have existed a number of credit facilities, as a group known under the umbrella term of a Bill Purchasing/ Discounting facility (the "Bill Purchasing Facility"), in one form or another between Emmsons and Oriental Bank. *Monga Aff.* at 3 ¶ 8. Attached is a copy of the Sanction of/Renewal-cum-Enhancement of Credit Facilities, from Oriental Bank to Emmsons, dated August 8, 2006, which sets forth the details of the Bill Purchasing Facility in effect at the time of attachment (the "Credit Facilities Renewal"). *Id.* Ex. E.

The attached funds were transferred as payment by Akila on a bill of exchange (the "Bill of Exchange") purchased by Oriental Bank pursuant to the Bill Purchasing Facility. *Monga Aff.* at 4, ¶10. The purchase by Oriental Bank of the Bill of Exchange was in the nature of a "foreign usance documentary bill purchased" facility. *Id.* at 2. Under this type of facility, Oriental Bank purchases from Emmsons, usually at a discount, the future amount due under a bill of exchange. *Id.* at 4, ¶9. Emmsons then presents the necessary commercial documents, such as a bill of lading and commercial invoice, to Oriental Bank, which presents them to the

importer's bank with the instruction to release the commercial documents to the importer in

return for the importer's signing of a time draft promising to pay at a later date (usance period),

but no later than 90 days from the date of shipping. *Id.*

      Other provisions of the Bill Purchasing Facility provide that bills will be

negotiated or discounted only after Emmsons obtained risk insurance in the form of a guarantee

in favor of Oriental Bank from Export Credit and Guarantee Corporation of India (ECGC), and a

credit report on the drawees from their bankers. *Monga Aff,* Ex. E at 9 .

**The Bill of Exchange**

      In May, 2006, Emmsons entered into a contract with Akila in which Emmsons

agreed to ship a quantity of rice to Durban, South Africa. *Monga Aff.* . at 4, ¶ 10. The rice was

shipped on August 21, 2006 and the Bill of Exchange was drawn by Emmsons on Akila in the

amount of $474,000. *Id.* It was due 90 days from the date of the bill of lading, that is,

November 20, 2006. *Id.*

      On August 28, 2006, Oriental Bank purchased the Bill of Exchange and the

export documents pursuant to the Bill Purchasing Facility, credited Emmsons' account at

Oriental Bank and presented the documents to State Bank of India for delivery to and payment

by Akila. *Id.* at 4, ¶ 11. Oriental Bank then sent a foreign bills purchase advice to Emmsons

noting that it had purchased the export documents. *Id.*

      On November 3 and again on November 20, 2006, pursuant to the Bill of

Exchange, State Bank of India transferred funds to an account maintained Oriental Bank at ABN

Amro Bank, N.V., in New York. *Id.* at 5, ¶ 12. The wire transfer instructions designate Oriental

Bank of Commerce as the beneficiary and its bank as ABN Amro Bank NV in New York.

*Answer Of Garnishee Standard Chartered Bank In Response To Maritime Attachment And*

*Garnishmen. Monga Aff.* Exhibit H at 2.  The instructions also contained information provided by the originator, Standard Chartered Bank, to the beneficiary, Oriental Bank, as to the purpose of the wire transfer.  *Id.*  Emmsons was referred to therein, which apparently caused the Standard Chartered Bank computers to stop the transfer due to the PMAG.  *Id.*

## ARGUMENT

### 1.  THE BURDEN IS ON GEB SHIPPING TO SHOW WHY THE PMAG SHOULD NOT BE VACATED OR OTHER RELIEF GRANTED

Supplemental Rule E applies to actions *in personam* with process of maritime attachment and garnishment. Rule E(1).  Under Rule E(4)(f) of the Supplemental Rules for Admiralty and Maritime Claims the defendant or any other party claiming an interest in the attached property is entitled to a prompt hearing at which the plaintiff shall be required to show cause why the attachment should not be vacated.  Rule E(4)(f).

The plaintiff bears the burden of demonstrating why the attachment, which is the basis for this Court's jurisdiction over the defendant, should not be vacated.  *Winter Storm Shipping. Ltd. v. TPI*, 198 F.Supp.2d 385, 2002 A.M.C. 461, 46 UCC Rep.Serv.2d 796 (S.D.N.Y. 2002) (citing *Maritima Petroleo E Engenharia, LTDA v. Ocean Rig I AS*, 78 F.Supp.2d 162 (S.D.N.Y. 1999)); *see also Ullises Shipping Corp. v. FAL Shipping Co., Ltd.*, 415 F.Supp.2d 318, 322, 2006 A.M.C. 1094 (S.D.N.Y. 2006).

The evidence must be viewed in the light most favorable to the party whose property is attached. *Unitas Finance Ltd. v. Di Gregorio Navegacao, Ltda.*, 1999 WL 33116415, *1 (D.N.J. 1999); *see also United Shipping Servs. Three, Inc. v. U.S. Express Lines, Ltd.*, 1998 WL 770599 (E.D.Pa. 1998).

2. **THE BURDEN IS ON GEB SHIPPING TO PROVE OWNERSHIP OF THE PROPERTY BY EMMSONS**

"The case law, the authorities, and basic logic demonstrate that no *quasi in rem* jurisdiction under Rule B can exist without some res to be attached. In fact, for Rule B attachment to be appropriate, it is clear that the property must be located within the district and the property must belong to the defendant." *Blueeye Nav. v. Oltenia Nav.*, Inc., No. 94 Civ. 1500 (LAP), 94 Civ. 2653 (LAP), 1995 WL 66654, at *4 (S.D.N.Y. 1995) (citations omitted).

The property to be attached must belong to the defendant and the plaintiff has the burden of proving ownership. *Limonium Maritime, S.A. v. Mizushima Marinera*, S.A. 961 F.Supp. 600, 607 (S.D.N.Y., 1997) (*citing International Marine Consultants, Inc. v. Karavias*, No. 82 Civ. 8296(CMM), 1985 WL 1515, at *3-4 (S.D.N.Y., 1985)); *see also Maryland Tuna Corp. v. MS Benares*, 429 F.2d 307, 322 (2d Cir. 1970).

3. **CHOICE OF LAW**

Federal law applies to procedural issues in admiralty cases, including attachments of funds under Supplemental Rule B. *Dominion Bulk International, S.A. v. Naviera Panoceanica, S.A.C.*, 2006 WL 3408799 (S.D.N.Y.)(citing *T & O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.*, 415 F.Supp.2d 310, 314 (S.D.N.Y. 2006), *Maersk, Inc. v. Neewra, Inc.*, 2006 WL 2854298 (S.D.N.Y. 2006)).

Indian law, however, must be applied to substantive questions of the rights of the parties in the proceeds of the Bill of Exchange. *Id.* (citing, *T & O Shipping Ltd.*, 415 F.Supp.2d at 314; *Filia Compania Naviera S.A. v. Petroship, S.A.*, No. 81-7515, 1982 U.S. Dis. LEXIS 9404, at *8 (S.D.N.Y. 1982).

In India, the law relating to bills of exchange and other negotiable instruments is codified under the Negotiable Instruments Act, 1881 (the "N.I.A."). *Opinion of Avadh Behari*

*Rohatgi* at 1 (Lindquist Aff., Ex. 5). Pursuant to section 134 of the N.I.A., in the absence of a contract to the contrary, the liability of the maker or drawer of a foreign bill of exchange is "regulated in all essential matters by the law of the place where he made the instrument." (*Lindquist Aff.*, Ex. 6). Here, the Bill of Exchange is physically located in India, and it was made by an Indian corporation to be paid to the order of a nationalized bank of India with branches only in India pursuant to a credit facility governed by the laws of India. *Id.* at 8.

## 4. THE ATTACHMENT IS INVALID BECAUSE STANDARD CHARTERED BANK IS NOT THE PROPER GARNISHEE AND BECAUSE THE PROPERTY IS NOT LOCATED IN THIS JURISDICTION

### a. THE BILL OF EXCHANGE IS A NEGOTIABLE INSTRUMENT

Because the Bill of Exchange is "payable to the order of Oriental Bank" it is a negotiable instrument. *N.I.A.* § 13. Upon its transfer and delivery (whether actual or constructive) to Oriental Bank, the Bill of Exchange was negotiated, *N.I.A.* § 14, and endorsed, *N.I.A.* s. 46, with the right of further negotiation and endorsement by Oriental Bank, *N.I.A.* §§ *50 and 51*. Any holder who derived title from Oriental Bank would have all and the same rights under the Bill of Exchange as Oriental Bank. *N.I.A.* s.53.

### b. ORIENTAL BANK IS THE HOLDER IN DUE COURSE OF THE BILL OF EXCHANGE

Pursuant to the N.I.A., until the contrary is proved, Oriental Bank as holder of the Bill of Exchange is presumed to be the holder in due course.[2] *N.I.A.* s. 118. Moreoover, as stated in the Opinion of Avadh Behari Rohatgi, Senior Advocate before the Supreme Court of India and a former Judge of the High Court of Delhi, submitted Oriental Bank, as the discounting bank, "becomes the holder in a due course and has a valid title against the whole world and is fully protected against any claim which a third party may have against the exporter. For he has

---

[2] "The "holder" of a promissory note, bill of exchange or cheque means any person entitled in his own name to the possession thereof and to receive or recover the amount due thereon from the parties thereto." *N.I.A.* § 8.

purchased the bill for value and for good consideration without notice." Lindquist Aff. Ex. 6 at 7, ¶ 26.

The Bill of Exchange is an instrument in writing containing an unconditional order signed by Emmsons directing Akila to pay to the order of Oriental Bank a certain sum of money; therefore, it is a "bill of exchange." *N.I.A.* § 5. The fact that the order to pay was for a future date, "at 90 days of the date of shipped on board bill of lading," does not render it conditional. *N.I.A.* § 5.

Pursuant to Section 9 of the N.I.A., a "holder in due course" means "any person who for consideration became the possessor of a promissory note, bill of exchange or cheque if payable to bearer, or the payee or indorse thereof, if [payable to order] before the amount mentioned in it became payable, and without having sufficient cause to believe that any defect existed in the title of the person from whom he derived his title." *Lindquist Aff.* Ex. 6 (Rohatgi Opinion) at 2, ¶ 4; *Lindquist Aff.* Ex. 7 (*N.I.A.* § 9). Oriental Bank became entitled to the possession of the Bill of Exchange and to receive the amount due from Akila by purchasing it before payment became overdue and without sufficient cause to believe that any defect existed in the title. Oriental Bank is, therefore, the holder in due course.[3] *Lindquist Aff.* Ex. 6 at 2, ¶5, 7, ¶ 28, 29; *N.I.A.* §§ 7 and 9.

c. **AS HOLDER IN DUE COURSE OF THE BILL OF EXCHANGE, ORIENTAL BANK IS THE PROPER GARNISHEE**

An electronic funds transfer ("EFT") may be attachable as it passes through banks located in this jurisdiction. *Aqua Stoli Shipping Ltd., v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 436, 2006 A.M.C. 1872, (2d Cir. 2006). However, courts still look to the transaction

---

[3] As a holder who purchased the Bill of Exchange for value and in good faith, Oriental Bank also would be the "holder in due course" under New York law. New York Uniform Commercial Code § 3-302.

underlying the transfer to determine whether or not a particular EFT can be attached as property

of the defendant. *See, e.g., Prime Shipping Co. Ltd., v. Wajilam Exports(s) Pte. Ltd.*, 2006 WL

1539330 (S.D.N.Y.) (vacating the attachment of an EFT of funds transferred pursuant to a letter

of credit); *Vamvaship Maritime Ltd. v. Shivnath Rai Harnarain (India) Ltd.*, 2006 WL 1030227

(S.D.N.Y. 2006) (upholding the attachment of EFT sent as payment on executory contract);

*Dominion Bulk International, S.A. v. Naviera Panoceanica, S.A.C.*, 2006 WL 3408799

(S.D.N.Y.) (upholding attachment of EFT sent as an advance hire payment pursuant to an

executory charter party).

   In maritime attachment cases not involving EFTs, courts have looked to the

underlying transaction to determine whether a Rule B attachment can be upheld. *See e.g.,*

*Union Planters Nat'l Bank v. World Energy Sys. Assoc.*, 816 F.2d 1092 (6th Cir.1987)(affirming

a decision to quash a Rule B attachment because funds available under a letter of credit are not

property subject to attachment); *Oceanfocus Shipping, Ltd. v. Naviera Humbolt*, 962 F.Supp.

1481 (S.D.Fla.1996)(same); *Ferrostaal Metals Corp. v. S.S. Lash Pacifico*, 652 F.Supp. 420

(S.D.N.Y.1987) (same).

   There is no case law discussing the issue of the maritime attachment of the

proceeds of a negotiable instrument. *See e.g., Maersk, Inc. v. Neewra, Inc.*, 443 F.Supp.2d

519, 525 (S.D.N.Y. 2006) (EFTs were of funds from the defendants bank account obtained as

war reparations); *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 266, 48 UCC Rep.Serv.2d

1255, (2d Cir. 2002) (EFTs being transferred by defendant as payment pursuant to a contract

on an unrelated commercial transaction); *Noble Shipping, Inc. v. Euro-Maritime Chartering*

*Ltd.*, 2003 WL 23021974 (S.D.N.Y.) (EFTs were sent as payment on an invoice of freight

pursuant to a contract of charter); *HBC Hamburg Bulk Carriers GMBH & Co. KG v.*

*Proteinas y Oleicos S.A. de C.V.*, 2005 WL 1036127 (S.D.N.Y.)(attached EFTs were payments sent to defendant by customers for deposit in its Mexican bank account); *Ullises Shipping Corp. v FAL Shipping Co. Ltd.*, 415 F.Supp.2d 318, 2006 A.M.C. 1094 (S.D.N.Y.2006) (no indication in the decision about the type of debt underlying the $40 million worth of attached funds); *Aqua Stoli Shipping Ltd., v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 2006 A.M.C. 1872, (2d Cir. 2006)(same).

Where "precedent in federal admiralty law is so thin," courts "should turn to state law more directly on point." *Reibor International, Ltd. v. Cargo Carriers (KACZ-CO.) Ltd.*, 759 F.2d 262, 266 1985 A.M.C. 2269, 53 USLW 2543 (2d Cir. 1985).   In *Reibor*, the Second Circuit Court of Appeals looked to the laws of the State of New York, specifically Article 62 of the New York Civil Practice Law and Rules (the "N.Y. CPLR") governing attachment, in determining whether or not an attachment pursuant to Supplemental Rule B was valid. *Reibor*, 759 F.2d at 266; *See also, Seamar Shipping Corp. v. Kremikovtzi Trade Ltd*, 2006 WL 3335578 (S.D.N.Y.) (looking to New York's codification of the Uniform Commercial Code to determine whether EFT was attachable); *Energy Transport, Ltd. v. M.V. San Sebastian*, 2003 WL 21415267 (S.D.N.Y.) (looking to New York State law in vacating a maritime attachment of funds held by bank in account of intermediary for benefit of defendant); *Aqua Stoli Shipping Ltd., v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 2006 A.M.C. 1872 (2d Cir. 2006) (noting that in the absence of a federal rule, a court should look to state law for guidance).

According to section 6202 of the N.Y. CPLR, "[a]ny debt or property against which a money judgment may be enforced as provided in section 5201 is subject to attachment.  The proper garnishee of any such property or debt is the person designated in

11

section 5201." According to the relevant provision, section 5201 of the N.Y. CPLR, the proper garnishee of a negotiable instrument is the person holding it.[4] N.Y. CPLR § 5201(c)(4) (emphasis added).

In addition, under New York common law, the New York State Court of Appeals has determined that where intangible property is "deemed to have become embodied in formal paper writings, e.g., negotiable instruments . . . attachment depends on the physical presence of the written instrument within the attaching jurisdiction." *ABKCO Industries, Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670, 675, 350 N.E.2d 899, 901, 385 N.Y.S.2d 511, 513 (N.Y. 1976). Thus, in New York, levy can be made on debts represented by negotiable instruments only by levying on the holder of the instrument or seizing the instrument itself. *Koehler v. Bank of Bermuda Ltd.*, 2005 WL 551115 (S.D.N.Y. 2005) (under New York law, stock certificates must be located within the state in order to be attached) (citing *Underwriters Bank, Inc. v. First Chicago Intern. Banking Corp.*, 47 Misc.2d 539, 541, 262 N.Y.S.2d 828, 829 - 830 (Sup.1965)); *See also Dyer v. Dyer*, 231 A.D. 453, 454, 247 N.Y.S. 540, 541-42 (1st Dep't. 1931) ("Shares owned by a non-resident defendant in a foreign corporation are not property within the State of New York, even though the corporation be doing business here, unless the stock certificates themselves are found within the State.").

Commentators have noted that "allowing attachment only of the actual physical instrument itself is necessary to avoid the problem of multiple seizures of the same property." *Creditor Process Against Negotiable Notes: The Case For a New UCC S 3-420*, 24 Wm. & Mary L. Rev. 503, 520 –521 (1978). "The most reasonable approach to the problem of creditor process with respect to negotiable notes is to permit seizure of the note itself pursuant

---

[4] Section 5201(c)(4) of the N.Y. C.P.L.R. states that, "where property or a debt is evidenced by a negotiable instrument for the payment of money, . . ., the instrument . . . shall be treated as property capable of delivery and the person holding it shall be the garnishee."

to a writ of execution. States using this approach repudiated the common law rule that notes are not subject to levy and apply the usual creditor remedy of execution, treating negotiable notes as tangible personal property." *Id.* (citing to New York's statute, N.Y. CPLR § 5201, as one of the states treating negotiable notes as tangible personal property).

Although there is no federal statute controlling attachments to enforce money judgments by civilians, the federal government has created the Federal Debt Collection Procedures Act (the "FDCPA"). The FDCPA "provides the exclusive civil procedures for the United States to recover judgment on a debt; or to obtain, before judgment on a claim for a debt, a remedy in connection with such claim." 28 U.S.C. § 3001 (1990). The relevant provision is section 3205(b)(2)(c), which governs the attachment of negotiable instruments by the United States. It is identical to section 5201 of the N.Y. CPLR. *See* 28 U.S.C. § 3205(b)(2)(c); *N.Y. CPLR* § 5201(c)(4).

Although the FDCPA is not controlling here, district courts in the Southern District of New York have looked to its provisions as "persuasive as the most recent Congressional declaration of an approach to debt collection viewed as appropriate." *Schueler v. Rayjas Enterprises, Inc.*, 847 F.Supp. 1147, 1164 (S.D.N.Y.1994); *See also, MCI Communications Corp. v. Russell*, 861 F.Supp. 280, 281 (S.D.N.Y.,1994); *Cablevision Systems Corp. v. 45 Midland Enterprises,* 858 F.Supp. 42, (S.D.N.Y.1994) (noting that the importance of a provision of New York law on enforcing money judgments is emphasized by the inclusion of a similar provision in the Federal Debt Collection Procedures Act).

Here the intangible property, the debt from Akila to Emmsons, has become embodied in "formal paper writings," the Bill of Exchange; therefore, the property to be attached is not the proceeds of the Bill of Exchange, not the debt represented by the Bill of

Exchange, not the transfer of funds pursuant to the Bill of Exchange, but the actual written instrument itself, the Bill of Exchange. The proper garnishee is the holder of the Bill of Exchange, Oriental Bank. And because proper attachment depends on the presence of the written instrument, and because the Bill of Exchange is located in India, it cannot be attached in this jurisdiction.

### 5. THE PROPER GARNISHEE OF FUNDS BEING HELD BY ORIENTAL BANK IS ORIENTAL BANK

Even if the attached funds were not the proceeds of a negotiable instrument, but were being transferred to Oriental Bank pursuant to an executory contract between Emmsons and a third party, Oriental Bank would still be the proper garnishee, not Standard Chartered Bank. In *Energy Transport, Ltd. v. M.V. San Sebastian*, 2003 WL 21415267 (S.D.N.Y. 2003), the district court vacated a Rule B attachment because it was not served on a proper garnishee. In that case, funds "earmarked" for the defendant in a New York bank account maintained by a third party had been attached.

In *Energy Transport*, the plaintiff, Energy Transport, Ltd. ("ETL") had chartered a vessel, the M.V. San Sebastian, from defendant, Oilmar Co., Ltd., Panama ("Oilmar") for the carriage of oil from the United States to the Far East. Pursuant to the charter party, payment was to be deposited by the plaintiff with a third party, Odin Marine, Inc. ("Odin"), which was to then pass payment along to defendant. According to a stipulation between the plaintiff and Odin, the attached money was being held by Odin for the ultimate benefit of the defendant.

During transit there was an explosion and fire onboard the vessel and both the ship and the cargo were severely damaged. As a result, Oilmar withheld discharge of the cargo on the grounds that it was asserting a lien on the cargo in anticipation of non-payment of freight.

In response, ETL filed an application for attachment pursuant to Rule B. As a result of the attachment order, funds held in an account maintained by Odin with J.P. Morgan Chase Bank were attached. The funds consisted of a payment of sub-freights for the San Sebastian paid by a sub-charterer.

The issue before the Court was whether service of the attachment on J.P. Morgan Chase Bank was sufficient to garnish funds held in Odin's account that were earmarked for the defendant. The Court held that it was not. The Court agreed with the defendant that Odin was the proper garnishee, and also agreed that service upon J.P. Morgan Chase Bank was not proper because it made the bank the garnishee although there was no relationship between J.P. Morgan Chase Bank and the defendant and the bank was not holding any property for the defendant. The Court noted that the bank would be a proper garnishee if Odin were the defendant.

Therefore, the Court vacated the attachment because it was not served on a proper garnishee and, because the proper garnishee was not located in the Court's district, the attachment could not be served on the proper garnishee.

Here, the relationship between Emmsons and the funds being held by Standard Chartered Bank is even more tenuous (it is actually non-existent) than that of the defendant in *Energy Transport* and the funds being held by J.P. Morgan Chase Bank. In *Energy Transport*, the attached funds were a direct payment from the plaintiff to the defendant pursuant to a charter party between the plaintiff and defendant which was at issue in the case and, according to a stipulation by the third party, the funds were being held by it for the ultimate benefit of the defendant. Here, the attached funds are from an unrelated commercial transaction between Emmsons and an unrelated party. In addition, the attached funds are not being held by Oriental Bank for the ultimate benefit of Emmsons since Oriental Bank purchased the underlying Bill of

15

Exchange months before the transfer of funds through Standard Chartered Bank took place. Emmsons' name was on the EFT only as an aid from the transferor to Oriental Bank to identify the funds transfer.

### 6. ELECTRONIC FUNDS TRANSFERS ARE NOT AN ATTACHABLE INTEREST

It is the law of this circuit that an EFT to or from a party is attachable by a court as it passes through banks located in that court's jurisdiction. *Aqua Stoli*, 460 F.3d at 436 (*citing Winter Storm Shipping Ltd., v. TPI*, 310 F.3d 263). However, currently pending before the Second Circuit Court of Appeals is a case asking the Court to revisit the "issue of whether the beneficiary of an Electric Funds Transfer has a property interest in the EFT while it is en route to the beneficiary." *Vamvaship Maritime Ltd., v. Little Rose Trading LLC, Movant-Appellant, Shivnath Rai Harnarain {India} Ltd.,Defendant*, Court of Appeals Docket #: 06-2121-cv.

There is good reason to believe that the Court of Appeals may overrule or limit its holding in *Winter Storm* that EFTs are attachable as property of the defendant. In July 2006, the Court of Appeals decided the case of *Aqua Stoli Shipping Ltd., v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 2006 A.M.C. 1872 (2nd Cir., July 2006). The issue before the Court in *Aqua Stoli* was "to what extent the district court may require a showing by the plaintiff beyond the simple fact that the textual requirements of Rule B have been met." *Aqua Stoli*, 460 F.3d at 438. The Court held that once a plaintiff had carried his initial burden to show that his attachment satisfies the requirements of Supplemental Rule B, a district court may vacate an attachment only upon certain limited circumstances. *Id.* at 436.

Although the Court of Appeals specifically limited its decision to a determination of the required showing of a plaintiff at a Rule E(4)(f) hearing, in a footnote, the Court of Appeals cast doubt on its *Winter Storm* decision regarding EFTs:

The correctness of our decision in *Winter Storm* seems open to question, especially its reliance on *Daccarett*, 6 F.3d at 55, to hold that EFTs are property of the beneficiary or sender of an EFT.[5]  Because *Daccarett* was a forfeiture case, its holding that EFTs are attachable assets does not answer the more salient question of whose assets they are while in transit.  In the absence of a federal rule, we would normally look to state law . . . Under state law, the EFT could not be attached because EFTs are property of neither the sender nor the beneficiary while present in an intermediate bank. *Id.* at 446, footnote 6 (emphasis in the original).

## 7. <u>THE COMPLAINT SHOULD BE DISMISSED BECAUSE THIS COURT DOES NOT HAVE JURISDICTION OVER THE DEFENDANT</u>

The burden of establishing personal jurisdiction rests with the plaintiff. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).  To survive a motion to dismiss for lack of personal jurisdiction, GEB Shipping must have alleged sufficient facts in the Complaint to make a prima facie showing that the Court has jurisdiction over Emmsons. *Id.*; *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

Here, the sole basis for this Court's jurisdiction over Emmsons is the attachment of the EFT. *Winter Storm Shipping. Ltd. v. TPI*, 198 F.Supp.2d 385, 2002 A.M.C. 461, 46 UCC Rep.Serv.2d 796 (S.D.N.Y. 2002).   The Bill of Exchange is not the property of Emmsons.  Even if the Bill of Exchange were the property of Emmsons, the proceeds of a negotiable instrument are not attachable as property of the defendant.  GEB Shipping has failed to demonstrate that any property of Emmsons has been located in this district to make Supplemental Rule B jurisdiction appropriate and no other bases for jurisdiction has been alleged; therefore, GEB Shipping has failed to demonstrate that this Court has jurisdiction over the defendants. *See Blueeye Nav. v.*

---

[5] *United States v. Daccarett*, 6 F.3d 37 (2d Cir. 1993) involved a civil forfeiture action under federal drug laws.

*Oltenia Nav., Inc.*, No. 94 Civ. 1500 (LAP), 94 Civ. 2653 (LAP), 1995 WL 66654, at *4

(S.D.N.Y. 1995).

Dated: New York, New York
      March 7, 2007

                      Respectfully submitted,

                      FOX HORAN & CAMERINI LLP
                      Attorneys for Defendant
                      Emmsons International Ltd.

                      By:  s/ Eric Lindquist
                            Eric Lindquist
                            825 Third Avenue
                            New York, NY  10022
                            Tel. (212) 480-4800