Eric Lindquist (EL-4305)
FOX HORAN & CAMERINI LLP
Attorneys for Defendants
825 Third Avenue
New York, New York 10022
(212) 480-4800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GEB SHIPPING CO., LTD.,                       :
                                              :    Index No. 06 Civ. 7649
                          Plaintiff,          :
                                              :
            -against-                         :
                                              :
EMMSONS INTERNATIONAL, LTD.,                  :
                                              :
                          Defendants.         :
-----------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO VACATE THE EX-PARTE ORDER FOR PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT AND TO DISMISS THE COMPLAINT

Emmsons International Ltd. ("Emmsons" or the "Defendant") submits this reply memorandum of law in further support of its motion to vacate the ex-parte order for process of maritime attachment and garnishment and to dismiss the complaint and in response to plaintiffs' memorandum of law in opposition to defendant's motion to dismiss (the "Opposition Motion").

### I.

Plaintiff argues that the fact that Oriental Bank has not appeared in this action to lay any claim to the funds should guide the court's decision. Oriental Bank's actions are of course irrelevant to a determination of the applicability of the maritime attachment law or of this Court's jurisdiction over Defendant. Obviously Oriental Bank—an Indian bank

without any branches outside of India, much less any in the United States or New York—prefers to rely on the guarantee provided to it by Export Credit and Guarantee Corporation of India (ECGC) rather than undertaking the expense and inconvenience of an appearance in New York. *Monga Aff,* Ex. E at 9.

Plaintiff also asserts that "Emmsons has submitted no documentation from Oriental Bank indicating in any way that the Oriental Bank believes the attached funds to be its own." *Opposition Motion* at 6-7. Such is not the case. Attached as Exhibit G to the Lindquist Affidavit, is a letter from Oriental Bank to Standard Bank dated December 16, 2006 in which Oriental Bank states, "[w]e once again like to inform you that since captioned bill was purchased by us, by virtue of the same we become the holder of bill in due course and this frozen money belongs to Oriental Bank of Commerce only."

## II.

Plaintiff proposes that this Court must look only to federal law in deciding this case and may not consider New York or Indian law in determining whether the property is an attachable interest of Defendant. *Opposition Motion* at 10-12. It cites the Second Circuit's decision in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir.,2006) to support the proposition that "when a case is heard pursuant to a federal court's admiralty jurisdiction, federal law controls a determination of the ownership of a piece of property, even in the face of a state statute to the contrary." *Opposition Motion* at 12. Plaintiff also cites *Reibor International, Ltd. v. Cargo Carriers (KACZ-CO.) Ltd.*, 759 F.2d 262 (2d Cir.,1985), for the proposition that "[i]n this Circuit, it is the rule that federal law governs all questions concerning the validity of a Rule B attachment." *Opposition Motion* at 10.

Both *Aqua Stoli* and *Reibor,* however, specifically state that it is appropriate to look to state law for guidance in the absence of a federal rule, and the court in *Reibor International* actually considered the laws of the State of New York in making its decision. According to *Aqua Stoli*, "[i]n the absence of a federal rule, we would normally look to state law, which in this case would be the New York codification of the Uniform Commercial Code, N.Y. U.C.C. Law §§ 4-A-502 to 504." *Aqua Stoli*, 460 F.3d at 446. According to *Reibor International*, "we agree with the district court that the precedent in federal admiralty law is so thin that we should turn to state law more directly on point. We clearly have this option where we find it appropriate." *Reibor International*, 759 F.2d at 266 (looking to Article 62 of the N.Y. CPLR to determine whether or not an attachment pursuant to Supplemental Rule B was valid).

Recently, in the Southern District of New York case of *Sonito Shipping*, the court applied English law to the determination of whether a whether the complaint pled a "valid prima facie admiralty claim," noting that since "Supplemental Rules apply, as Rule A states, "to the *procedure* in admiralty and maritime claims," courts must look elsewhere for answers to issues of substantive law. *Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd.*, 2007 WL 806612, *4 (S.D.N.Y.) (emphasis in the original).

Here there are two issues of substantive law that must be decided in determining whether the attachment is valid: (1) whether the Bill of Exchange at issue here is a negotiable instrument; and (2) if so, whether the proceeds of a negotiable instrument are attachable separate and apart from the negotiable instrument itself. For the first question, the Court should look to Indian law to determine the status of the Bill of Exchange. *Defendant's Memorandum of Law* at 7-8. For the second, since there is no federal case

law discussing the maritime attachment of the proceeds of a negotiable instrument, the Court should look to the laws of the State of New York. *Aqua Stoli Shipping*, 460 F.3d at 446; *Reibor International*, 759 F.2d at 266.

### III.

Plaintiff states that "Emmsons entire argument in the case at hand seeks to analogize the Bill of Exchange to a letter of credit transaction." *Opposition Memo* at 14-15. Here Plaintiff protests too much. The only reference to letters of credit in Defendant's memo is, literally, parenthetical and arose in support of Defendant's proposition that a court should look at the transaction underlying attached funds to determine whether a Rule B attachment can be upheld. *Opposition Motion* at 10.

Plaintiff's concern is telling, however, since the Bill of Exchange here is more similar to a letter of credit than to any of the interests attached under Rule B in cases cited in Plaintiff's memo (other than the promissory note at issue in *Florida Conference Association of Seventh-Day Adventists*, discussed more fully below).[1]

Although the transaction at issue was not pursuant to a letter of credit, it is similar to the transaction underlying the attached funds in *Prime Shipping Co. Ltd. v. Wajilam Exports Pte. Ltd.*, 2006 WL 1539330 (S.D.N.Y.). In *Prime Shipping*, a buyer obtained a negotiable letter of credit, which listed the defendant as the beneficiary, to purchase a cargo of goods from the defendant. *Id.* at *1. The defendant applied to a bank, BNP Paribas Singapore ("BNP"), for discount financing of the sale to the buyer and BNP

---

[1] The cases cited by Plaintiff involved the attachment of the following: (1) a debt owed to a third party, *Trans-Asiatic Oil Ltd. S.A. v. Apex Oil Co.*, 743 F.2d 956 (1st Cir.,1984); (2) a bank account, *Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A.*, 1999 WL 33218589 (M.D.Fla.); (3) an arbitration award, *Oil Transport Co., S.A. v. Hilton Oil Transport*, 1994 WL 757944 (S.D.Tex.); (4) freight owed for partial shipment of cargo, *Iran Exp. Lines v. Sumatrop*, 563 F.2d 648 (4th Cir.,1977); (5) a boat, *Cowles v. Kinzler*, 225 F.Supp. 63 (W.D.Pa.,1963); and (6) an advance hire payment pursuant to an executory charter party, *Dominion Bulk International, S.A. v. Naviera Panoceanica, S.A.C.*, 2006 WL 3408799 (S.D.N.Y.). *Opposition Motion* at 13-14.

4

purchased the letter of credit "subject to final payment." *Id*. BNP then credited defendant's account for the purchase price minus fees and interest and, eventually, forwarded documents to the issuer, Andhra Bank of Calcutta, as required under the letter of credit. *Id*. Andhra Bank acknowledged the purchase and accepted the documents forwarded, with payment due February 21, 2006 (180 days from the date of negotiation). *Id*. On February 23, 2006, Andhra Bank wired instructions to American Express Bank ("AEB") to transfer the proceeds of the credit to BNP's account, designating BNP as the beneficiary of the funds. *Id*. Since AEB had been served a notice of garnishment, it stopped the transfer of funds. *Id*.

The facts of the present case are strikingly similar to *Prime Shipping*. Here, Defendant was listed as the beneficiary of the Bill of Exchange. *Defendant's Memorandum of Law* at 6. Oriental Bank purchased the Bill of Exchange pursuant to a credit facility and credited Defendant's account for the purchase price. *Id*. at 5. Oriental Bank forwarded the commercial documents under the Bill of Exchange to the drawee, Akila, by way of its bank, State Bank of India. *Id*. Akila acknowledged the purchase of the goods and accepted the documents forwarded with payment due in ninety days from the date of negotiation. *Id*. Before the Bill of Exchange became due, Akila transferred the proceeds of the Bill of Exchange to Oriental Bank's account, designating Oriental Bank as the beneficiary. *Id*. The funds had to go through Standard Bank, which, as it had been served a notice of garnishment, stopped the transfer of funds. *Id*. at 5-6.

In *Prime Shipping*, the court described the plaintiff's argument as the following:

> Plaintiff, seeking to benefit from Rule B's expansive scope, argues that the funds attached represent "either a payment by [the buyer] to Wajilam, or Wajilam's debt to BNP, or both" because, by virtue of BNP's purchase of the credit being "subject

5

to final payment," the negotiation was, in plaintiff's words, only "conditional." *Prime Shipping*, 2006 WL 1539330, *1.

Plaintiff here argues that Emmsons's obligation to Oriental Bank under the Bill of Exchange would not be extinguished until final payment by Akila, and therefore Emmsons maintained a "continuing interest" in the attached funds, which "represent a debt that Akila owes to Emmsons or, at a minimum, the funds represent a debt that Emmsons owes to the Oriental Bank." *Opposition Motion* at 13.

Plaintiff seeks to distinguish the present transaction from a letter of credit by noting that Oriental Bank was "not a purchaser of the Bill of Exchange for consideration, but was simply a provider of credit to Emmsons, who owed it a debt thereunder." *Opposition Motion* at 15. This distinction will not hold water. In *Prime Shipping*, the consideration for Andhra Bank's purchase of the letter of credit was, as it is in the instant case, a credit to the defendant's account. *Prime Shipping*, 2006 WL 1539330, *1. It has long been the law in both New York and the United States "that pre-existing debt does constitute a valuable consideration" for a negotiable instrument. *Swift v. Tyson*, 41 U.S. 1 (1842) (holding that a pre-existing debt is valuable consideration for a bill of exchange); *Westinghouse Electric & Mfg. Co. v. Brooklyn Rapid Transit Co.*, 288 F. 221 (S.D.N.Y.,1923)(same). In addition, according to Defendant's expert on Indian law, under Indian law, the credit from Oriental Bank pursuant to the bill discounting facility to Emmsons was adequate consideration to become a holder in due course. *Defendant's Memorandum of Law*, Ex. 5 at 3-5.

Letters of credit and bills of exchange serve the same essential purpose: to facilitate international trade. Courts have noted that this purpose is of ultimate importance in their determination to vacate an attachment of a letter of credit. In *Diakan Love, S.A. v. Al-Haddad Bros. Enterprises, Inc.*, 584 F.Supp. 782 (S.D.N.Y.,1984) in vacating an order

of attachment of a letter of credit, the court noted that its conclusion was in large part supported by the "special role and nature of the letter of credit." *Id.* at 785. In language quoted approvingly by *Prime Shipping*, the court stated:

> The letter of credit is of central importance to international trade. It permits buyers and sellers to perform their transactions at thousands of miles distance from one another without risk that the money or the goods will not be forthcoming from the other. This is so in large part because banks around the world will pay upon each other's documentary credits with assurance of honor by the issuer of the credit. The letter of credit can be seen as an essential lubricant that permits the wheels of international trade to turn. *Diakan Love*, 584 F.Supp. at 785.

Although less commonly used in the United States now than in the past, courts have noted the bill of exchange's own special role in facilitating international trade. As the Supreme Court has stated, "[i]t is for the benefit and convenience of the commercial world, to give as wide an extent as practicable to the credit and circulation of negotiable paper." *Swift v. Tyson*, 41 U.S. 1 (1842) (holding that a pre-existing debt is valuable consideration for a bill of exchange); *see also Winston v. Westfeldt*, 22 Ala. 760 (Ala. 1853) ("[t]he necessities of commerce, at a very early period, led to the use of bills of exchange. They constitute the medium through which its vast operations are carried on. Hence, in all civilized nations, laws are passed inviting the greatest confidence in their integrity. Such is the sanctity which a wise policy has thrown around the bona fide holder of such paper."); *Ohio Life Insurance and Trust Co. v. McCague*, 18 Ohio 54, 58 (Ohio,1849) (*quoting Story on Bills*, 16, 17, sec. 14) ("'A bill of exchange in most, if not in all commercial countries, possesses some peculiar advantages and privileges, over common contracts. These * * * are allowed in order to give them a ready circulation and extensive credit.'"); *State v. Lampley*, 2006 WL 3201040 (Wash.App. Div. 2) (quoting 11 Am.Jur.2d Bills and Notes § 399)("the convenience and necessities of commerce require negotiable instruments which

can pass almost as freely in the commercial world as legal tender, and demand, consequently, the protection of those holding them in due course.").

In addition, the United Nations adopted its Convention on International Bills of Exchange and International Promissory Notes, stating that it was doing so, "[b]eing aware that the free circulation of bills of exchange and promissory notes facilitates international trade and finance, Being convinced that the adoption of a convention on international bills of exchange and international promissory notes will facilitate the use of such instruments." 2 Payment Systems Appendix 4, UN Doc A/RES/43/165 of January 17, 1989.

## IV.

Plaintiff states that "Emmsons erroneously argues that is has no property interest in the funds that have been attached because Oriental Bank was the presumed holder in due course of a Bill of Exchange. . . However, this argument obfuscates the facts because the Bill of Exchange has not been attached." *Opposition Motion* at 13. Emmsons has attempted no obfuscation and Plaintiff has clearly articulated Emmsons's precise argument: that only a Bill of Exchange itself and not the funds transferred under a Bill of Exchange, is properly subject to attachment.

Plaintiff cites *Florida Conference Association of Seventh-Day Adventists v. Kyriakides*, 151 F.Supp.2d 1223 (C.D. Cal. 2001) as support for the proposition that "[r]estrictions such as title or ownership are not the controlling factors in determining if a given property may be restrained." *Opposition Motion* at 13-14. However, despite Plaintiff's belief to the contrary, the court's opinion in no way stands for that proposition. The court's actual holding could more accurately be described as determining that Rule B vests "the court with discretion to order a garnishee to pay a matured debt into the registry

8

[of the court]." *Id.* at 1227. There is no argument in the current case that a court does not possess that power; however, *Florida Conference Association* is highly relevant to an important issue in the case at hand, as that case involved the attachment of a negotiable instrument, a promissory note, and the *garnishee was the holder of the promissory note. Id.*

As the Defendant argued in its motion, the proper garnishee in this case was Oriental Bank as the holder of the Bill of Exchange. *Defendant's Memorandum of Law* at 13-14; *see also,* NYJUR CREDITOR § 114 ("where property or a debt is evidenced by a negotiable instrument for the payment of money, or a negotiable document of title, the instrument or document is treated as property capable of delivery and the person holding it is the proper garnishee."); AMJUR ATTACHMENT § 155 ("[f]or a debt evidenced by negotiable paper to be subjected to garnishment, there must exist between the garnishee and the principal defendant the relation of debtor and creditor.").

## V.

Plaintiff argues that Defendant is presenting a "completely different position in the Indian litigation that is completely at odds with the position presented to this court." *Opposition Motion* at 7. This is based upon hearsay evidence in the *Pratap Declaration* about Emmsons's Indian counsel's statements to the Indian court. In any case, it would be quite appropriate for the Indian Court to await the outcome of the instant proceedings before attaching Defendant's property in India. No principle of equity requires that court to double the Plaintiff's security.

## VI.

9

The Plaintiff presents a declaration of an expert on Indian law, in which he states without citation to any evidence or authority, Indian or otherwise, that Oriental Bank is not a holder in due course of the Bill of Exchange. *Owen Declaration*, Ex. 6 at 4-5. He discusses only one case, *Dena Bank v. The Madhya Pradesh National Textiles Corp. Ltd.* He distinguishes that case on the basis that the customer's account was unconditionally credited as value for the bill, whereas here, the credit was pursuant to a credit facility. However, he provides no authority for the proposition that this distinction has any relevance to whether the Bill of Exchange is a negotiable instrument or whether Oriental Bank is a holder in due course.

Plaintiff's argument that Akila's actions in paying the Bill of Exchange somehow prove that it was not freely transferable is nonsense. *Opposition Motion* at 16. Akila simply performed in accordance with the terms of the Bill of Exchange, which required payment to the order of Oriental Bank a certain sum within ninety days. If Oriental Bank had sold the paper to a third party, Akila's obligation would have been unaffected. Mr. Pratap's assertion that the Bill of Exchange is "not divorced" from the underlying transaction is wholly unsupported.

Dated: New York, New York
       April 13, 2007

                                  FOX HORAN & CAMERINI LLP
                                  *Attorneys for Plaintiff*

                            By:      s/ Eric Lindquist
                                      Eric Lindquist (EL-4305)
                                      825 Third Avenue
                                      New York, New York 10022
                                      (212) 480-4800

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Reply Memorandum of Law in Support of Defendants' Motion to Vacate the Ex-Parte Order for Process of Maritime Attachment and Garnishment and to Dismiss the Complaint was served by First Class Mail on April 13, 2007 on the following:

>Mr. Owen F. Duffy, Esq.
>Chalos, O'Connor & Duffy LLP
>366 Main Street
>Port Washington, NY 11050

>>s/ Katharine Griffing
>>Katharine Griffing
>>Attorney for Defendant