CHALOS, O'CONNOR & DUFFY LLP
Attorneys for Plaintiff,
GEB SHIPPING CO. LTD
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600
Fax: (516) 767-3605
Owen F. Duffy (OD-3144)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
GEB SHIPPING CO. LTD.,                      :
                                            :
                           Plaintiff,       :
            v.                              :        06 CV 7649(RCC)
                                            :
EMMSONS INTERNATIONAL LTD.,                 :
                                            :
                           Defendant.       :
-------------------------------------------------------x

**MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION
TO VACATE PROCESS OF MARITIME ATTACHMENT
AND TO DISMISS THE COMPLAINT**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ………………………………………...……………ii

TABLE OF AUTHORITIES …………………………………………….................iii

PRELIMINARY STATEMENT...…………………..…………………....…………….1

STATEMENT OF FACTS…………………………………………………………....2

    A)    Procedural History……………………………………………...2

    B)    The History of the Attached Funds……………………………………4

    C)    The History of the Action in India……………………………………...7

LEGAL ARGUMENT…………………………………………………………8

    I.    THE BURDEN OF PROOF……………………...…………………8

    II.    FEDERAL LAW GOVERNS THE VALIDITY OF THE ATTACHMENT………………………………………………10

    III.    EMMSONS HAS AN ATTACHABLE INTEREST IN THE FUNDS HELD BY GARNISHEE STANDARD CHARTERED BANK………...13

        A)    THE ATTACHED FUNDS ARE THE TANGIBLE OR INTANGIBLE PROPERTY OF EMMSONS………………………………………13

        B)    STANDARD CHARTERED BANK IS THE PROPER GARNISHEE………19

    IV.    ELECTRONIC FUNDS TRANSFERS ARE ATTACHABLE…………20

CONCLUSION …………………………………….....................................................22

## <u>TABLE OF AUTHORITIES</u>

**PAGE**

**CASES**

AET Inc. Limited v. Procuradoria de Servicios Maritimos Cardosa & Fonesca,
    464 F. Supp. 2d 241 (S.D.N.Y. 2006)..................................................21

American Anthracite and Bituminous Coal Corp. v. Amerocean S.S. Co.,
    131 F. Supp. 244 (E.D. Pa. 1955).....................................................8

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,
    2006 U.S. App. LEXIS 19302 (2d Cir. N.Y. July 31, 2006)..............9, 12, 20, 22

Chantier Naval Voisin v. M/Y Daybreak,
    677 F. Supp. 1563 (S.D. Fla. 1988)....................................................11

Cowles v. Kinzler,
    225 F. Supp. 63 (W.D. Pa. 1963).......................................................14

Dominion v. Naviera,
    2006 U.S. Dist. LEXIS 85616 (S.D.N.Y. Nov. 21, 2006)............................14

Energy Transp., Ltd. v. M.V. San Sebastian,
    2003 U.S. Dist. LEXIS 10306, 2003 A.M.C. 2826 (S.D.N.Y. 2003)...........19, 20

Esso Standard (Switzerland) v. The S/S Arosa Sun,
    184 F. Supp. 124 (S.D.N.Y. 1960).....................................................10

Florida Conference Association of Seventh-Day Adventists v. Kyriakides,
    151 F. Supp. 2d 1223 (C.D. Cal. 2001)............................................13, 14

HBC Hamburg Bulk Carriers GmbH & Co. KG v. Proteinas y Oleicos S.A. de C.V.,
    No. 04-6884, 2005 U.S. Dist. LEXIS 8009 (S.D.N.Y. May 4, 2005)..............14

International Marine Consultants, Inc. v. Karavias,
    1985 U.S. Dist. LEXIS 19272 (S.D.N.Y. June 3, 1985)...........................8

Iran Express Lines v. Sumatrop, AG,
    563 F.2d 648 (4th Cir. 1977).........................................................14

Isbrandtsen Co. v. Lenaghan,
    128 F. Supp. 662 (D.N.Y. 1954).......................................................8

Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navegacion, C.A.,
    1999 U.S. Dist. LEXIS 22500 (M.D. Fla. Nov. 18, 1999)..........................14

<u>Maersk, Inc. v. Neewra, Inc.</u>,
     No. 05-4356, 2006 U.S. Dist. LEXIS 73096,
     2006 WL 2854298 (S.D.N.Y., Oct. 6, 2006)…………………………………..11, 19

<u>Maryland Tuna Corp. v. MS BENARES</u>,
     429 F.2d 307 (2d Cir. 1970)…………………………………………………...8, 9, 10

<u>National Garment Co. v. New York, Chicago & St. Louis R.R. Co.</u>,
     173 F.2d 32 (8th Cir. 1949)……………………………………………………12

<u>Oil Transport Co., S.A. v. Hilton Oil Transport</u>,
     1994 A.M.C. 2817 (S.D. Tex. July 25, 1994)……………………………………14

<u>Prime Shipping Company Ltd. v. Wajilam Exports Pte. Ltd.</u>,
     2006 U.S. Dist. LEXIS 34637 (S.D.N.Y. 2006)…………………...……..9, 11, 15

<u>Reibor International, Ltd. v. Cargo Carriers (KACZ-CO), Ltd.</u>,
     759 F.2d 262 (2d Cir. 1985)……………………………………………………...10

<u>Sea Transp. Contrs., Ltd. v. Indus. Chemiques Du Sengal</u>,
     411 F. Supp. 2d 386, 2006 A.M.C. 1076 (S.D.N.Y. 2006)…………………….…7

<u>T & O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.</u>,
     415 F.Supp.2d 310 (S.D.N.Y. 2006)…………………………………………...10, 11

<u>Trans-Asiatic Oil Ltd., S.A. v. Apex Oil Co.</u>,
     743 F.2d 956 (1st Cir. 1984)…………………………………………………...14

<u>Vamvaship Maritime Ltd. v. Little Rose Trading LLC</u>,
     U.S.C.A. docket no. 06-212-cv……………………………………………………..21

<u>Wajilam Exps. (Sing.) Pte. Ltd. v. ATL Shipping Ltd.</u>,
     No. 05 Civ. 7955, 2006 WL 3019558 (S.D.N.Y. Oct. 23, 2006)…………………9

<u>Winter Storm Shipping, Ltd. v. TPI</u>,
     310 F.3d 263 (2d Cir. 2002)……………………………………..…………12, 13, 18

<u>Ythan Ltd. v. Am. Bulk Transp. Ltd.</u>,
     336 F. Supp. 2d 305 (S.D.N.Y. 2004)…………………………………………...18

## STATUTES and RULES

28 U.S.C.S. § 3002………………………………………………………………………19

*Fed. R. Civ. P.*, Supplemental Rules for Certain Admiralty and Maritime Claims,
Rules B and E................................................................................................................*passim*

## OTHER AUTHORITIES

2 E. Benedict, ADMIRALTY, § 288 at p. 348 (6th ed. A. Knauth 1940).....................12

F. Clerke, Praxis Supremae Curiae Admiralitatis titles 28, 32, *translated in* J. Hall,
Practice and Jurisdiction of the Court of Admiralty 60-67, 70-71 (1809)..................12

## PRELIMINARY STATEMENT

Plaintiff, GEB Shipping Ltd. (hereinafter "GEB Shipping"), by and through its undersigned counsel, Chalos, O'Connor & Duffy, LLP, respectfully submits this Memorandum of Law in Opposition to Defendant Emmsons International Ltd.'s Motion to Vacate the Process of Maritime Attachment and Garnishment issued pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (hereinafter "Rule B") and to Dismiss the Complaint against Defendant Emmsons International Ltd. (hereinafter "Emmsons").

In this case, Plaintiff has adequately alleged a *prima facie* maritime claim against Emmsons, the Defendant Emmsons is not found within the district and property belonging to the Defendant Emmsons within the district has been restrained. The Defendant Emmsons does not argue that the technical requirements of Rule B have not been met or that there are any other equitable reasons for vacating the attachment. Instead, the Defendant's sole ground for moving to vacate the attachment is that Emmsons has no attachable interest in the funds that are being restrained by garnishee, Standard Chartered Bank of New York.

Emmsons' argument is not valid, and the Motion to Vacate the Attachment must be denied. As more fully developed below, the Defendant is engaged in nothing more than a futile exercise to avoid enforcement of an arbitration award that the Defendant Emmsons admits is due and owing. In order to frustrate the enforcement of the arbitration award, Emmsons is playing a shell game with this Court by first seeking to obfuscate the nature of the funds under attachment and, then, arguing that Emmsons has no attachable interest in the property restrained by the garnishee, Standard Chartered Bank.

## STATEMENT OF FACTS

**A)**    **Procedural History**

This case came before this Court when Plaintiff GEB Shipping filed a Verified

Complaint against Defendant Emmsons in the Southern District of New York on

September 22, 2006.  The complaint alleged, *inter alia*, the following:

1)    that the parties had entered into a maritime contract, a charter-party, on
      October 30, 2002.  *See*, Exhibit 1, Verified Complaint at paragraph
      "EIGHTH".

2)    Certain disputes arose and, in accordance with the terms and conditions of
      the charter-party, GEB shipping initiated arbitration proceedings against
      Emmsons in London, England seeking to recover damages for breach of
      the charter-party.  Emmsons fully participated in that arbitration.  *See*,
      Verified Complaint at paragraph "NINTH".

3)    On February 17, 2005, the panel of maritime arbitrators in London issued
      a substantial award in favor of GEB Shipping. *See*, Verified Complaint at
      paragraph "TENTH".

4)    Emmsons, in breach of its obligations under the charter-party has not paid
      the arbitration award.  *See*, Verified Complaint at paragraph
      "FOURTEENTH".

Because Emmsons could not be found within the Southern District, and the other

requirements for a Rule B attachment of funds existed, this Court issued an Order for the

clerk of court to issue a Process of Maritime Attachment and Garnishment against any

funds being held by the Defendant. *See,* Exhibit 2, Order for Issuance of Process of

Maritime Attachment and Garnishment, dated September 22, 2006. Consistent with the

Order, the Clerk of the Court issued Process of Maritime Attachment and Garnishment on

September 22, 2006. *See*, Exhibit 3, Process of Maritime Attachment and Garnishment.

Plaintiff served the process on several garnishees identified in the Court's Order, including the Standard Chartered Bank in New York. On November 3, 2006, pursuant to this Court's Order of Attachment of the funds belonging to Emmsons, the garnishee Standard Chartered Bank restrained funds in the amount of US$274,000.00. *See*, Exhibit 4, Answer of Garnishee Standard Chartered Bank in Response to Maritime Attachment and Garnishment dated November 22, 2006 and entered on November 27, 2006 (hereinafter "Answer of Garnishee"). On November 20, 2006, the garnishee restrained an additional $91,427.17.[1] *See id.* The garnishee identified these funds as property or assets belonging to the defendant and clarified that the funds were being wire transferred from the State Bank of India, as originator, to the Oriental Bank of Commerce for payment of reference "061900426280106IFO Emmsons Intr Imp Proceeds remitted by Akila Trading." *See id.*

On December 7, 2006, Defendant Emmsons filed an Answer to the Complaint. In that Answer, Defendant Emmsons admits that it had participated in the arbitration in London. *See*, Exhibit 5, Answer at ¶ 9. Further Emmsons admits that the arbitration panel issued an award in favor of GEB Shipping and against Emmsons in the amount stated by the Plaintiff. See, Exhibit 5 at ¶¶'s 10, 11, 12 and 13. Furthermore, Emmsons admits that it had not paid the arbitration award. *See*, Exhibit 5 at ¶ 14. Thus, it is undisputed that Emmsons is in default of the arbitration award.

Emmsons filed this "Motion to Vacate the Ex-Parte Order for Process of Maritime Attachment and Garnishment under Supplemental Rule E(4)(f) and to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)". The basis of the Motion is

---

[1] The Plaintiff being fully secured, the garnishee allowed the remainder of the US$200,000 wire transfer to proceed.

that GEB Shipping cannot prove that the funds that were attached were owned by GEB

Shipping, the funds were owned by the Oriental Bank of Commerce (hereinafter

"Oriental Bank") and that Electronic Funds Transfers (hereinafter "EFTs") are not an

attachable interest. *See*, Memorandum of Law in Support of Defendant's Motion to

Vacate the Ex-parte Order for Process of Maritime Attachment and Garnishment under

Supplemental Rule E(4)(f) and to Dismiss the Complaint pursuant to the Federal Rule of

Civil Procedure 12(b) (hereinafter "Memo of Law in Support"). Plaintiff GEB Shipping

now opposes that Motion with the filing of this Memorandum of Law.

**B)     The History of the Attached Funds**

As set forth in the documents presented by the Defendant Emmsons, the

following points are clear:

1)     More than a year after the arbitration award in London was rendered in

favor of GEB Shipping against Emmsons, on May 22, 2006, Emmsons entered into an

agreement with a party named Akila Trading (PTY) Ltd. (hereinafter "Akila") to sell it

rice for $474,000.00. *See*, Affidavit of Anil K. Monga in Support of Defendant's Motion

to Dismiss the Verified Complaint (hereinafter "Monga Affidavit") at Exhibit F.

2)     On August 8, 2006, Emmsons' line of credit was apparently renewed with

its bank, Oriental Bank. *See*, Monga Affidavit at Exhibit E.

3)     The Emmsons line of credit was in exchange for mortgages and liens on

Emmsons' property. *See id.* Under Indian law, the line of credit was in the form of loans

to be repaid by Emmsons and for which Emmsons would remain ultimately liable. *See*,

Exhibit 6, Declaration of Prashant S. Pratap in Support of Opposition to Vacate the

Process of Maritime Attachment and Garnishment (hereinafter "Pratap Declaration") at

4

¶¶'s 8-10.

4)     The line of credit issued to Emmsons included the statement that it was "to keep the bank informed of the happening of any event likely to have a substantial effect on their profits or business." *See*, Monga Affidavit at Exhibit E, eighth unnumbered page at ¶ 17. As such, the Oriental Bank should have been made aware of the arbitration award issued against Emmsons in London.

5)     Emmsons has not presented any proof that it advised the Oriental Bank of the arbitration award issued against Emmsons in London prior to the renewal of its line of credit with Oriental Bank.

6)     On August 21, 2006, the rice was apparently exchanged from Emmsons to Akila, and a bill of lading and commercial invoice were issued. *See*, Monga Affidavit at Exhibit F.

7)     Emmsons, however, structured the manner of the payment from Akila by instructing Akila to remit the payment for the cargo of rice to the Oriental Bank in connection with the issuance of a Bill of Exchange. *See id.*

8)     The Bill of Exchange instructed the "banker," the State Bank of India (apparently the bank for Akila), to draw $474,000.00 on the Akila account and pay it to the Oriental Bank of Commerce at a future date. *See id.*

9)     Emmsons was attempting to use the Akila debt to pay down the debt it owed to the Oriental Bank pursuant to its line of credit.

10)     However, the payment arrangements under the contract between Akila and Emmsons are not an irrevocable letter of credit transaction under Indian Law. *See*, Pratap Declaration at ¶ 7. Under these circumstances, if Akila does not make the payment when

it is due, Emmsons is still liable to the Oriental Bank for its original loan. *See*, id. at ¶ 11.

11)    The Bill of Exchange instructs the State Bank of India to transfer Akila's funds ninety (90) days after it is issued, making it effective on November 20, 2006. *See*, Monga Affidavit at Exhibit F.  Under these circumstances, the transfer could be revoked at any time before it was received by the Oriental Bank.

12)    The State Bank of India, prior to the November 20, 2006 due date, attempted to transfer funds in the amount US$274,000.00 to the Oriental Bank of Commerce on November 3, 2006. *See*, Answer of Garnishee, page 2.

13)    The State Bank of India transfer identified that the funds were the proceeds of a payment to Emmsons being remitted by Akila. *See*, id.

14)    Pursuant to the Process of Maritime Attachment to attach all funds, tangible or intangible, belonging to the Defendant, the garnishee attached these funds before they were transferred to the Oriental Bank. *See*, Process of Maritime Attachment and Garnishment, page 1.

15)    A second transfer was attempted, containing the same reference, this time for US$200,000.00, on November 20, 2006. *See*, Answer of Garnishee, page 2.  The garnishee, again pursuant to the Process of Maritime Attachment, attached US$91,427.17 of the transfer but allowed the remainder to be sent to the Oriental Bank. *See id.*

Separate and apart from the above, it cannot be emphasized enough that the Oriental Bank of Commerce has not appeared in this action and the Oriental Bank has presented no claim on the funds attached pursuant to the Process of Maritime Attachment[2].  Defendant Emmsons has submitted no documentation from the Oriental

---

[2] Supplemental Rule E (4) (f) provides: "Whenever property is arrested or attached, any person claiming an

Bank indicating in any way that the Oriental Bank believes the attached funds to be its own. Under these circumstances alone, it is clear that the attached funds belong to Defendant Emmsons.

### C)    The History of the Action in India

In its efforts to enforce the arbitration award against Emmsons, GEB Shipping has previously instituted suit in India. *See,* Exhibit 6, Pratap Declaration at ¶s15 & 16. This is in accord with Rule B which is often used to obtain security for actions to be heard elsewhere. Sea Transp. Contrs., Ltd. v. Indus. Chemiques Du Sengal, 411 F. Supp. 2d 386 (S.D.N.Y. 2006).

It is, however, important for the purposes of the instant motion to consider that Emmsons has represented a completely different position in the Indian litigation that is completely at odds with the position presented to this court. As set forth by GEB Shipping's advocate before the Delhi High Court, at a hearing on January 10, 2007, Emmsons' counsel sought to persuade the Delhi High Court that there was no need for Emmsons' to post security in that action because approximately US$400,000 had already been attached by GEB Shipping in the United States and, therefore, GEB Shipping's claim against Emmsons was adequately secured. *See id.*

Accordingly, by Emmsons' own admission, it has an interest in the funds attached in the New York action. At the very least, this point is indicative of the fact that Emmsons is willing to make contradictory statements in the courts of India from those presented in the U. S. in furtherance of its attempt to avoid enforcement of an undisputed arbitration award. *See id.* at ¶ 16.

---

interest in it shall be entitled to a prompt hearing ...".

# LEGAL ARGUMENT

## POINT I
## THE BURDEN OF PROOF

Defendant Emmsons argues that the property to be attached must belong to the defendant and the plaintiff has the burden of proving ownership. *See*, Memorandum of Law in Support, page 7.  However, the authority by the Defendant Emmsons in support of this proposition is not as authoritative as Emmsons represents it to be.

It is true that it was stated in International Marine Consultants, Inc. v. Karavias, 1985 U.S. Dist. LEXIS 19272, at *12-*13 (S.D.N.Y. June 3, 1985), that:

> [O]nce a defendant denies ownership of the property sought to be attached, plaintiff has the burden of proof to show that the property does indeed belong to the defendant, to sustain jurisdiction. *See*, Maryland Tuna Corp. v. MS BENARES, 429 F.2d 307, 322 (2d Cir. 1970); American Anthracite and Bituminous Coal Corp. v. Amerocean S.S. Co., 131 F. Supp. 244, 248 (E.D. Pa. 1955); Isbrandtsen Co. v. Lenaghan, 28 F. Supp. [662] at 664 [D.N.Y. 1954].

However, the reason for the citation in International Marine Consultants to Maryland Tuna is unclear.  In Maryland Tuna, the Second Circuit Court was not discussing the standard of proof required at a hearing pursuant to Rule E of the Supplemental Rules of the Federal Rules of Civil Procedure. Instead, the Second Circuit made its statement regarding Rule 10(a) of the Rules of the United States District Court for the Southern District of New York for Admiralty and Maritime Claims.  That rule no longer exists. Furthermore, the court in Maryland Tuna simply stated that:

> All Rule 10(a) seems to require is that the plaintiff prove that the property belongs to the defendant where, as here, the property named in the Process

is not delivered up to the marshal by the garnishee, before the District
Court can proceed to determine the case on the merits.

Maryland Tuna Corp. v. MS BENARES, 429 F.2d 307, 322 (2d Cir. 1970).

The modern view is that the standard and burden of proof that a plaintiff must
meet at a prejudgment hearing pursuant to Rule E is to simply show that an attachment
was properly ordered and complied with the requirements of Rules B and E. Agua Stoli
Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3rd 434, 445 n.5 (2nd Cir. 2006). To
sustain an attachment, a plaintiff must show that it has fulfilled the "filing and service
requirements of Rules B and E" and that: "1) it has a valid prima facie admiralty claim
against the defendant; 2) the defendant cannot be found within the district; 3) the
defendant's property may be found within the district; and 4) there is no statutory or
maritime law bar to the attachment." *Id. at 445* (footnote omitted). If a plaintiff fails to
demonstrate that it has met the requirements of Rules B and E, the district court must
vacate the attachment. *Id. at 445.* Maritime plaintiffs, however, are not required to prove
their case at this stage. See Wajilam Exps. (Sing.) Pte. Ltd. v. ATL Shipping Ltd., No. 05
Civ. 7955, 2006 WL 3019558, at *3 (S.D.N.Y. Oct. 23, 2006). Thus, the Plaintiff GEB
Shipping need only establish a prima facie case that the funds attached are the
defendant's property in order to maintain the attachment.

Separate and apart from that, while Defendant Emmsons seeks to make the
argument that the funds at issue belong to Oriental Bank, the fact of the matter is that
Oriental Bank has not appeared in this action to lay any claim to the funds. In this regard,
the court needs to consider the case entitled Prime Shipping Company Ltd. v. Wajilam
Exports Pte. Ltd., 2006 U.S. Dist. LEXIS 34637 (S.D.N.Y. 2006). In Prime Shipping, the

transfer of the proceeds of a letter of credit had been restrained pursuant to Process of

Maritime Attachment and the court granted the motion to vacate the attachment on the

basis that the funds were not the property of the defendant. However, in that case, the

motion to vacate was not presented by the Defendant Wajilam, but was, instead,

presented by BNP Paribas Singapore who claimed an interest in the funds and argued that

the funds belonged to the bank as opposed to the defendant. Certainly, that is not the

situation here and the court should be guided accordingly.


### POINT II
### FEDERAL LAW GOVERNS THE VALIDITY OF THE ATTACHMENT

Rule B of the Admiralty Rules permits a plaintiff to attach an absent defendant's

property if the plaintiff has an admiralty or maritime claim *in personam*. *See*, 7A.J.

Moore & A. Pelaez, MOORE'S FEDERAL PRACTICE para. B.03 (2d ed. 1983). In this

Circuit, it is the rule that federal law governs all questions concerning the validity of a

Rule B attachment. *See*, Reibor International, Ltd. v. Cargo Carriers (KACZ-CO), Ltd.,

759 F.2d 262 (2d Cir. 1985), *citing* Maryland Tuna Corp. v. The MS Benares, 429 F.2d

307, 321 (2d Cir. 1970) *and* Esso Standard (Switzerland) v. The S/S Arosa Sun, 184 F.

Supp. 124, 127 (S.D.N.Y. 1960). Consequently, Emmsons' arguments that Indian, or

even New York law, should determine Emmons' attachable interest in the funds being

restrained are of no moment.

Federal courts, in applying Rule B have consistently held that federal law governs

even when the underlying subject matter may be subject to foreign law. For example, in

T & O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A., *cited supra*, Judge Sheindlin

stated:

> when a party brings a Rule B attachment in this district, questions about its validity are governed by federal law. For example, in a recent case in this district, where English law was to be applied to the substantive questions in arbitration, the court applied federal law to the motion to vacate. 415 F.Supp.2d 310, 314 (S.D.N.Y. 2006).

As such, because the attachment of funds at issue in the case at hand was made pursuant to Rule B of the federal rules, federal law governs whether the funds were attachable.

The attachment of funds pursuant to Rule B is considered a procedural remedy, and federal law applies to procedural issues in admiralty cases. *See*, T & O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A., 415 F.Supp.2d 310, 314 (S.D.N.Y., 2006) (noting that "Rule B [attachment] is procedural in nature and when a party brings a Rule B attachment in this district, questions about its validity are governed by federal law"); *see also*, Maersk, Inc. v. Neewra, Inc., No. 05-4356, 2006 U.S. Dist. LEXIS 73096, 2006 WL 2854298 (S.D.N.Y., Oct. 6, 2006) (noting that attachment is a procedural remedy); *and see*, Chantier Naval Voisin v. M/Y Daybreak, 677 F. Supp. 1563, 1569 (S.D. Fla. 1988) (concluding that applying French substantive law to an admiralty claim does not divest the court of its equitable powers or require it to apply French procedural law). As a dispositive example on this issue, in Prime Shipping, the letter of credit was opened at an Indian bank by an Asian buyer in favor of a Singapore branch of a French bank. 2006 U.S. Dist. LEXIS 34637 (S.D.N.Y. 2006). The Prime Shipping court did not consider Indian, Singapore or French law to determine the claimant's interest in funds, and neither should this court.

Furthermore, it is important to note that Emmsons' later citations to New York State law are inapposite. *See*, Memorandum of Law in Support, page 11. First of all, federal admiralty law on Rule B is not "thin" as Emmsons contends. (Shepard's citation

service contains more than sixty (60) citations to <u>Winter Storm Shipping, Ltd. v. TPI</u>, 310 F.3d 263 (2d Cir. 2002)). Secondly, state law is irrelevant to the validity of a Process under Rule B. *See*, 2 E. Benedict, ADMIRALTY, § 288 at p. 348 (6th ed. A. Knauth 1940). Finally, and most importantly, when in conflict, federal law preempts state law. *See*, e.g., <u>National Garment Co. v. New York, Chicago & St. Louis R.R. Co.</u>, 173 F.2d 32, 35 (8th Cir. 1949) (federal law preempts state law in interpreting bills of lading). The underlying purpose of the Supplemental Rules for Admiralty was to preserve the ancient process of maritime attachment that had been known to courts of admiralty for centuries. *See*, F. Clerke, Praxis Supremae Curiae Admiralitatis titles 28, 32, *translated in* J. Hall, Practice and Jurisdiction of the Court of Admiralty 60-67, 70-71 (1809). The remedy of attachment, under the terms of Rule B, is completely independent of state law and of any state attachment or garnishment procedures, which may be employed by a libellant either instead of, or in addition to, a process issued pursuant to the Rule.

In sum, whether the funds attached in this case are the property of Emmsons is a question of federal admiralty law. Indian law has no effect on the property ownership of funds passing through banks in New York. Furthermore, when a case is heard pursuant to a federal court's admiralty jurisdiction, federal law controls a determination of the ownership of a piece of property, even in the face of a state statute to the contrary. *See*, <u>Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434, n.5, 2006 A.M.C. 1872 (2d Cir. 2006).

**POINT III**

**EMMSONS HAS AN ATTACHABLE INTEREST**
**IN THE FUNDS HELD BY GARNISHEE STANDARD CHARTERED BANK**

A. The Attached Funds are the Tangible or Intangible Property of Emmsons

Emmsons erroneously argues that it has no property interest in the funds that have

been attached because Oriental Bank was the presumed holder in due course of a Bill of

Exchange. *See*, Memorandum of Law in Support, pages 8-9. However, this argument

obfuscates the facts because the Bill of Exchange has not been attached.

Under federal admiralty law, attachable assets include credits and debts and the

definition of credits and debts is expansive. *See*, Rule B. In the case at hand, the funds

held pursuant to the Process of Maritime Attachment represent a debt owed to Emmsons

by Akila and, in which, Emmons has a continuing interest. The funds represent a debt

that Akila owes to Emmsons or, at a minimum, the funds represent a debt that Emmsons

owes to the Oriental Bank. *See*, Exhibit 6, Pratap Declaration at ¶¶'s 7-14. Either way,

for the purposes of the Rule B attachment procedure, Emmsons has a very real property

interest in those funds.

Rule B states that a defendant's property "tangible or intangible" is subject to

prejudgment attachment under the rule. Federal courts have read the "intangible"

definition in Rule B expansively.   The Court of Appeals in <u>Winter Storm Shipping Ltd.</u>

<u>v. TPI,</u> 310 F.3d 263, 276 (2nd Cir. 2002) accepted that the language of Rule B governing

maritime attachments was "broadly inclusive," permitting a plaintiff to attach a

defendant's tangible and intangible personal property. Restrictions such as title or

ownership are not the controlling factors in determining if a given property may be

restrained. *See,*  <u>Florida Conference Association of Seventh-Day Adventists v.</u>

13

Kyriakides, 151 F. Supp. 2d 1223 (C.D. Cal. 2001) (part of a promissory note was properly attached because it evidenced a debt, even though the debt was not due or payable at the time); and *see*, HBC Hamburg Bulk Carriers GmbH & Co. KG v. Proteinas y Oleicos S.A. de C.V., No. 04-6884, 2005 U.S. Dist. LEXIS 8009 (S.D.N.Y. May 4, 2005) (holding that an EFT does not remain the exclusive property of the sending-payor until it enters one of the banks associated with the recipient-beneficiary as opposed to an intermediary bank and declining to adjudicate the competing property interests of the sending-payor and recipient-beneficiary in a motion to vacate attachment).

A defendant's goods, chattels, credits and effects have been consistently found to be subject to attachment in an admiralty action. Linea Naviera de Cabotaje C.A. v. Mar Caribe se Navegacion C.A., 1999 U.S. Dist. LEXIS 22500 (M.D. Fla. Nov. 18, 1999) (sustaining attachment of bank accounts of two companies arguably related to the defendant because there were reasonable grounds to believe that defendant controlled the bank accounts); Trans-Asiatic Oil Ltd., S.A. v. Apex Oil Co., 743 F.2d 956 (1st Cir. 1984) (affirming attachment of debt owed by third party to defendant); Oil Transport Co., S.A. v. Hilton Oil Transport, 1994 A.M.C. 2817 (S.D. Tex. July 25, 1994) (permitting attachment of arbitration award in favor of defendant). Federal courts have permitted the attachment of debts even if they have not yet matured or have only partially matured. *See,* e.g., Iran Express Lines v. Sumatrop, AG, 563 F.2d 648 (4th Cir. 1977); *and* Cowles v. Kinzler, 225 F. Supp. 63 (W.D. Pa. 1963). Other interests that are contingent or have not yet matured may also be attached under federal maritime law. *See,* e.g., Dominion v. Naviera, 2006 U.S. Dist. LEXIS 85616 (S.D.N.Y. Nov. 21, 2006).

Emmsons entire argument in the case at hand seeks to analogize the Bill of

Exchange to a letter of credit transaction. *See*, Memorandum of Law in Support, page 10. However, Emmsons concedes that the funds at issue in this case were not being paid pursuant to a letter of credit obligation. *See,* Pratap Declaration at ¶ 7. Indeed, Emmsons argues that the attached funds are the subject of a negotiable instrument, the Bill of Exchange under Indian law. *See*, Memorandum of Law in Support, page 8. First, as stated above, federal law applies to a determination of whether or not a particular piece of property is attachable. Second, it is clear that the Oriental Bank was not a purchaser of the Bill of Exchange for consideration, but was simply a provider of credit to Emmsons, who owed it a debt thereunder. *See*, Pratap Declaration at ¶¶'s 8-13. Finally, in a letter of credit transaction, the obligation to pay is completely separate and independent from any obligation of the customer to the beneficiary under the sale of goods contract and separate as well from any obligation of the issuer to its customer under their agreement. <u>Prime Shipping</u>, 2006 U.S. Dist. LEXIS 345637 * 5. By contrast the situation at hand is completely the opposite because Akila's obligation to pay is directly related to the sale of goods. Consequently, any reliance by Emmsons' that the Bill of Exchange obligation is somehow similar to a letter of credit situation is misplaced.

As stated above, Emmsons does not cite to federal law for its contention that the attached funds are a negotiable instrument. Instead it cites only to Indian law. However, even under Indian law it is not at all clear that the funds are a negotiable instrument. *See*, Exhibit 6, Pratap Declaration at ¶¶'s 11-12. Furthermore, it is not even clear that the case law cited to by the Indian attorney for Emmsons stands for the proposition that the attached funds are a negotiable instrument. *See*, Exhibit 6, Pratap Declaration at ¶¶'s 13-14.

Emmsons does cite to federal law for its proposition that courts look to the underlying transaction to determine whether a Rule B attachment should be upheld. *See*, Memorandum of Law in Support, page 10. Emmsons then repeats its contention that the funds were the subject of a freely transferable negotiable instrument. *See, id.* at page 10. However, the Bill of Exchange itself does not say that it is transferable. *See* Monga Affidavit at Exhibit F. The Bill of Exchange clearly directs Akila to pay the Oriental Bank. No other holder is mentioned. No where on the document does it state that it is freely transferable or a negotiable instrument. While Emmsons argues that "[a]ny holder who derived title from Oriental Bank would have all and the same rights under the Bill of Exchange as Oriental Bank," this argument is belied by the actions of Akila in making its payments pursuant to the Bill of Exchange. If it were true that the Bill of Exchange was freely transferable, then any person could have come along and purchased the Bill of Exchange and then presented it to Akila for payment. If this was the case, Akila was unwise in the extreme to have made the first half of its payment (US$274,000.00) seventeen (17) days before payment was due. If the Bill of Exchange was a transferable negotiable instrument, then Akila might have been paying the wrong entity. Clearly Akila did not believe that the Bill of Exchange was a negotiable instrument. It was not.

Additionally, even if one were to view the Bill of Exchange as "sold" to the Oriental Bank, it continued to be the basis of security for the line of credit issued to Emmsons by the bank. *See*, Exhibit 6, Pratap Declaration at ¶ 8. Thus, if Akila had not made its payment, Emmsons line of credit would have been proportionately reduced. Under these circumstances, Emmsons continued to have a property interest in the payment of the Bill of Exchange.

Essentially, Emmsons structured its contract for the sale of rice with Akila so that the payment would be made to the Oriental Bank, its creditor. *See*, Pratap Declaration at ¶ 7. Akila, through its bank, the State Bank of India, eventually made the payment it owed to Emmsons in two parts, the first part being made several weeks before payment was actually due. However, before either of the payments was received by its creditor, the funds were attached pursuant to this Court's Order.

These funds were not simply "earmarked" for Emmsons, they were being made to pay a debt that was owed to Emmsons by paying Emmsons' bank. However, it is important to note that the debt owed by Emmsons to Oriental Bank was not fulfilled by Emmsons simple instruction to Akila of how to remit payment. *See*, id. at ¶¶'s 8-11. For this reason, Emmsons still owes the debt to the Oriental Bank for the line of credit that the bank extended to it. Once the payment was made and received, and not before, Emmsons would have a net gain. As such it had not "sold" the proceeds of the Bill of Exchange nor had Oriental Bank "purchased" them. Essentially, Emmsons showed the Oriental Bank that Oriental Bank would be receiving money and Oriental Bank agreed to extend additional credit to Emmsons. In a manner of speaking, Oriental Bank simply gave Emmsons an "advance" of the payment Emmsons expected to receive. *See*, Pratap Declaration at ¶ 9.

While Emmsons received credit from Oriental Bank by demonstrating that payment from Akila had been agreed to by the parties, Emmsons' debt to Oriental Bank was not discharged. Id. at ¶11. In the final analysis, the attached funds were an electronic funds transfer (EFT) best characterized as an agreed payment to a creditor (the Oriental Bank) by a debtor of its debtor (Akila was a debtor of Emmsons who owed a

debt to Oriental Bank).  Because Rule B allows for the attachment of "intangible" property, the funds at issue in the case at hand, the payment by a debtor to his creditor's creditor, are attachable tangible property which Emmsons was owed, or, at a minimum were intangible property in which Emmsons has and had a very direct interest because it has a direct effect on the amount of money available to it.

When all things are considered, the case at hand is basically similar to the one addressed by the Court of Appeals for the 2nd Circuit in Winter Storm Shipping, Ltd. In Winter Storm, the defendant had chartered a vessel from the plaintiff shipowner but had breached the charter party by failing to pay the full freight. 310 F.3d at 265. The defendant had funds wired from its Bangkok bank to pay an unrelated debt owed to a third party. Id. at 266. The funds were wired through an intermediary bank in New York and were held pursuant to a maritime attachment. Id. The Second Circuit held that even though the funds were intended as payment to a third party, they were still property of the defendant subject to attachment. See, Winter Storm, 310 F.3d at 266, 273, 276; accord Ythan Ltd. v. Am. Bulk Transp. Ltd., 336 F. Supp. 2d 305, 309 (S.D.N.Y. 2004). This was so even though the funds were in an intermediary bank. In this case, Emmsons caused funds to be wired from the State Bank of India branch in South Africa to pay an unrelated debt to a third party, i.e. Oriental Bank. Under Winter Storm, the EFTs restrained at The Standard Chartered Bank are Emmsons' property and, therefore, are subject to GEB Shipping's Order of Attachment.

Under these circumstances it is clear that the funds attached in the case at hand were tangible or intangible property being transferred for the benefit of Emmsons.  As such, they were properly attached by the garnishee in this case and should continued to be

held pending the outcome of this case.

B. STANDARD CHARTERED BANK IS THE PROPER GARNISHEE

Emmsons instead of addressing the expansive way in which federal courts have

read Rule B, argues instead that the "proper garnishee of funds being held by Oriental

Bank is Oriental Bank." *See*, Memorandum of Law in Support, page 14.  While this

claim is incredulous on its face, particularly because Oriental Bank has never been in

possession over the funds attached, it must be addressed.  While Rule B does not

specifically define the term "garnishee," the term is defined elsewhere in the federal law.

Chapter 176 of Title 28, entitled "Federal Debt Collection Procedure," states:

> (7) "Garnishee" means a person (other than the debtor) who has, or is
> reasonably thought to have, possession, custody, or control of any
> property in which the debtor has a substantial nonexempt interest,
> including any obligation due the debtor or to become due the debtor, and
> against whom a garnishment under section 3104 or 3205 [28 USCS § 3104
> or 3205] is issued by a court.
> 28 U.S.C.S. § 3002.

While this section is only applicable to actions under §§ 3104 or 3205, it is

analogous to the case at hand.  In this case the funds were not simply "earmarked" for

Emmsons. The funds attached in this case were payment for the sale of rice to Emmsons

being routed to Oriental Bank. *See, Exhibit* 6, Pratap Declaration at ¶ 7.  As such, the

proper garnishee in this case is The Standard Chartered Bank, who is the holder of funds

being transferred to pay a debt owed to Oriental Bank by Emmsons being paid by a

debtor of Emmsons, Akila, through Akila's bank, the State Bank of India.

Emmsons makes much of the holding in Energy Transp., Ltd. v. M.V. San

Sebastian, 2003 U.S. Dist. LEXIS 10306, 2003 A.M.C. 2826 (S.D.N.Y. 2003).  However,

in that case, the Court went through the definitions of garnishee in the following fashion:

According to Blacks Law Dictionary, a garnishee is a "person or institution (such as a bank) that is indebted to or is bailee for another whose property has been subjected to garnishment." Black's Law Dictionary 689 (Deluxe Seventh Edition 1999).

…

The journey through the legal dictionary continues to the definition of a bailment: "A delivery of personal property by one person (the bailor) to another (the bailee) who holds the property for a certain purpose under an express or implied-in-fact contract." Id. The bank is unquestionably the bailee for Odin. However, it is not holding any property for defendant under an express or implied-in-fact contract between the bank and defendant.

2003 U.S. Dist. LEXIS 10306, at *4-*5.

This case is quite different. The EFTs attached in this case explicitly stated that they represented payment ("pmt") of "proceeds remitted" by Akila for Emmsons. *See*, Answer of Garnishee, page 2. The payment was being received by Oriental Bank for repayment of a contract between Emmsons and Oriental Bank. Furthermore, the payment was being made pursuant to a contract between Akila and Emmsons. The fact that Emmsons structured the receipt of its payment by having it sent to Oriental Bank to pay for its own separate line of credit is of no moment.

### POINT IV

### ELECTRONIC FUNDS TRANSFERS ARE ATTACHABLE

The Defendant, Emmsons, seeks to persuade this Court that electronic funds transfers ("EFT"s) are not attachable property for the purposes of Rule B Maritime Attachment. The argument is not valid, and it is easily disposed of.

For example, when addressing a motion for reconsideration on this issue in Maersk v. Neewra, this very Court stated:

In Aqua Stoli, the Second Circuit cited Winter Storm in support of its

decision to vacate a district court opinion that had vacated the attachment of an EFT. *Aqua Stoli, 460 F.3d at 436*. Defendant Sahani cannot credibly maintain, therefore, that Aqua Stoli overruled Winter Storm or disallows the attachment of EFTs. That the court of appeals made mention, in a footnote, of a reason why Winter Storm might have been incorrectly decided is of no moment. Indeed, Aqua Stoli can only be read to reaffirm Winter Storm as the law of this circuit. *Aqua Stoli, 460 F.3d at 436* ("EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction.") (citing *Winter Storm, 310 F.3d at 263*). Thus, while this Court did not consider the Second Circuit's opinion in Aqua Stoli when rendering the Order, it would have reached the same result had it done so."
2006 U.S. Dist. LEXIS 73096, at *4 (S.D.N.Y. 2006).

As an alternative argument on this issue, the Defendant cites to a case entitled Vamvaship Maritime Ltd. v. Little Rose Trading LLC, U.S.C.A. docket no. 06-212-cv for the proposition that "[t]here is good reason to believe that the Court of Appeals may overrule of limit its holding in Winter Storm that EFTs are attachable as property of the defendant." *See*, Memorandum of Law in Support of Motion to Vacate, at page 16. Defendant's reliance on Vamvaship is misplaced for two reasons. First, a district court should not speculate that the Court of Appeals is going to change the law in some future decision. AET Inc. Limited v. Procuradoria de Servicios Maritimos Cardosa & Foneseca, 464 F. Supp. 2d 241, 244 (S.D.N.Y. 2006)(Judge Chin dismissed, as not being helpful, "the Defendant's speculation that the Second Circuit at some future time may reverse course and find EFT's are not attachable."). Secondly, the Court of Appeals will not be taking the issue up in the case entitled Vamvaship Maritime Ltd. v. Little Rose Trading LLC because the parties to that case filed a Stipulation to Withdraw the Appeal with prejudice on March 15, 2007. *See*, Court of Appeals Docket # 06-2121-cv.

In sum, the law of this Circuit is that EFT's are attachable pursuant to a Process of Maritime Attachment and Garnishment as they pass through banks located within the

Southern District of New York <u>Aqua Stoli</u>, 460 F.3d 434, 436 (2nd Cir. 2006).

<b>CONCLUSION</b>

The circumstances of this case are clear: the Defendant's property has been restrained in accordance with the Rule B maritime attachment procedure and the Defendant has moved to vacate the attachment for the singular purpose of frustrating the enforcement of an undisputed arbitration award. The Defendant, Emmsons, clearly has an attachable interest in the funds being restrained by garnishee, The Standard Chartered Bank. As such, the Defendant's motion to vacate the attachment must be denied.

Dated:   Port Washington, New York
       March 28, 2007

CHALOS, O'CONNOR & DUFFY LLP
Attorneys for Plaintiff,
GEB SHIPPING CO., LTD.

By: _____
Owen F. Duffy (OD-3144)
366 Main Street
Port Washington, New York 11050
Tel:     516-767-3600
Telefax: 516-767-3605

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronic mail and U.S. Mail on this 28th day of March 2007 to:

Eric Lindquist, Esq.
Fox Horan & Camerini LLP
Attorneys for Defendant
Emmsons International Ltd.
825 Third Avenue
New York, NY 10022
Tel.: (212) 480-4800
Email: elindquist@foxlex.com

Owen F. Duffy (OD-3144)
366 Main Street
Port Washington, NY 11050
Phone: (516) 767-3600
Fax:    (516) 767-3605
Email: ofd@codus-law.com